UNITED STATES of America, Appellee,

v.

Wayne C. MONTGOMERY,
Defendant, Appellant.

No. 82–1836.

United States Court of Appeals,
First Circuit.

Argued May 3, 1983.

Decided Aug. 4, 1983.

Wendie I. Gershengorn, Boston, Mass., for defendant, appellant.

James F.X. Dinneen, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN and BOWNES, Circuit Judges, and BONSAL,* Senior District Judge.

COFFIN, Circuit Judge.

Defendant/appellant Wayne Montgomery was convicted in a jury trial of possession of a shotgun in violation of 26 U.S.C. § 5861(d) and possession of three firearms in violation of 18 U.S.C. Appendix § 1202. On appeal he challenges the denial of his motion to suppress certain post-arrest statements made to an arresting law enforcement agent. We must decide whether those statements resulted from custodial interrogation in violation of appellant's rights to remain silent and to consult with an attorney before making any statements.

In December of 1981, pursuant to a search warrant, local police accompanied by agents of the federal Bureau of Alcohol, Tobacco and Firearms ("the ATF") searched a residence in Weymouth, Massachusetts, and recovered several firearms,

* Of the Southern District of New York, sitting by designation.

including three with whose possession appellant was ultimately charged. Appellant, who was present in the house at the time of the search, was arrested at that time by local police on charges not relevant to this appeal.

About seven months later appellant was arrested in Milford, Massachusetts by ATF agents pursuant to a warrant alleging that he had violated the federal firearms laws. After informing appellant of his *Miranda* rights, ATF agents transported him to Boston. There he was shown an ATF form entitled "Waiver of Right to Remain Silent and of Right to Advice of Counsel". Appellant initialled each statement in the "Statement of Rights" portion of the form, which explained his rights to remain silent and to have the advice and representation of counsel. He refused to sign the portion of the form waiving those rights until he had spoken with an attorney. Agents then proceeded to photograph and fingerprint appellant.

According to ATF agent Sherman, appellant initiated the following conversation after being fingerprinted:

> Montgomery: Am I being charged with each gun?
>
> Agent Sherman: You will probably be charged with two counts.
>
> Montgomery: Did all of the guns fire?
>
> Agent Sherman: Yes. Why do you want to know?
>
> Montgomery: The sawed-off was in pieces.
>
> Agent Sherman: That is right, but it only took a minute to put together.
>
> Montgomery: Ya, but it was missing a spring.
>
> Agent Sherman: Well the State Police test fired the gun and it worked. Did you have any problem firing the gun?
>
> Montgomery: I could not get it to work.

Appellant, again according to agent Sherman's statement, then indicated that he did not want to talk any more about the firearms, and their conversation closed.

Agent Sherman's memorandum recounting the conversation was prepared during pre-trial discovery and given to defense counsel. Appellant moved to suppress his statements reported in the memorandum on the basis that they were made in the absence of counsel and after he had specifically refused to sign a waiver of his constitutional rights without the advice of counsel. That motion was denied, on the basis of the above factual background, which was stipulated, and agent Sherman's testimony, essentially summarizing the above facts, was admitted at trial. The jury, during the course of its deliberations, requested that it be allowed to rehear that testimony, and its request was granted.

### 1. *Custodial Interrogation*

■ The Fifth Amendment does not bar the admission of volunteered statements. *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). We therefore must first decide whether appellant's statements resulted from custodial interrogation.

■ Though appellant initiated the conversation, agent Sherman extended the conversation with express questions of his own. Appellant made incriminating statements only after agent Sherman had interjected questions. The Supreme Court has held that "the *Miranda* safeguards come into play whenever a person in custody is subjected to either *express questioning* or its functional equivalent ... [i.e.,] any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect". *Rhode Island v. Innis,* 446 U.S. 291, 300–301, 100 S.Ct. 1682, 1689–1690, 64 L.Ed.2d 297 (1980) (emphasis added). Since the questioning here was express, we have no occasion to go farther. This was custodial interrogation. We are thus required to address the issue of waiver.

### 2. *Waiver*

■ Even though appellant's statements resulted from custodial interrogation without presence of counsel, they were nonetheless properly admitted if appellant waived his rights to remain silent and to

the presence of an attorney. "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Miranda, supra,* 384 U.S. at 445, 86 S.Ct. at 1612. Such waiver need not be expressly stated or written.

"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but it is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

But a heavy burden is on the government to demonstrate waiver. "The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but at least in some cases waiver can be clearly inferred from the actions and words of the person interrogated." *Id.*

The government argues here that because appellant initiated the conversation with agent Sherman he waived his Fifth Amendment rights even as to questions posed by the agent. It points to the fact that appellant terminated as well as initiated the conversation as evidence that he knowingly and voluntarily waived his rights, answering questions only at his own selection.

In arguing that appellant's waiver of his rights can be inferred from his initiation of the conversation, the government relies on *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–1885, 68 L.Ed.2d 378 (1981). But any such implication in *Edwards* has been clearly dispelled by *Oregon v. Bradshaw,* —— U.S. ——, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), which was decided after oral argument in this case. The Court explained its holding in *Edwards:*

"We did not there [in *Edwards*] hold that the 'initiation' of a conversation by a defendant such as respondent would amount to a waiver of a previously invoked right to counsel; we held that af-

ter the right to counsel had been asserted by an accused, further interrogation of the accused should not take place 'unless the accused himself initiates further communication, exchanges, or conversations with the police.' 451 U.S. at 485 [101 S.Ct. at 1885].

. . . . .

But even if a conversation taking place after the accused has 'expressed his desire to deal with the police only through counsel,' is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation. . . .

Thus, the Oregon Court of Appeals was wrong in thinking that an 'initiation' of a conversation or discussion by an accused not only satisfied the *Edwards* rule, but *ex proprio vigore* sufficed to show a waiver of the previously asserted right to counsel. The inquiries are separate, and clarity of application is not gained by melding them together." *Id.* at ——, 103 S.Ct. at 2834.

It is therefore clear that the mere fact that a suspect, after requesting counsel, "reopened the dialogue" does not end the inquiry as to waiver. The "totality of the circumstances" must still be considered in determining "whether the purported waiver was knowing and intelligent". The burden, as always, is on the government and is a heavy one. *Miranda v. Arizona, supra,* 384 U.S. at 475, 86 S.Ct. at 1628; *North Carolina v. Butler, supra,* 441 U.S. at 372–73, 99 S.Ct. at 1756–57.

In the case at bar, according to agent Sherman's statement, after appellant read and initialled the form informing him of his rights and had requested counsel, he was photographed and fingerprinted. The conversation, above set forth, followed. We conclude that the lapse of time between appellant's request and the conversation was not an extended period, probably less than an hour. The question asked by appellant, "Am I being charged with each gun?",

was a natural, if not inevitable, query which would occur to one in his situation, who had been present seven months earlier when several guns had been seized. The answer ("You will probably be charged with two counts") was unresponsive; it obviously referred to the two qualitatively different offenses described in the indictment and conveyed no information as to the number of guns with which appellant was being charged. Either because of this nonresponsiveness or because appellant knew enough about the law to know that violation of the firearms law involved the possession of a firearm that was operable, he asked his second question ("Did all of the guns fire?").

This was the critical point at which the presence or absence of appellant's waiver of his right to counsel must be determined. It seems to us that both questions dealt with the nature of the charges against him, particularly with the quantity of guns he was being charged with possessing. There was no affirmative statement made, no hint of willingness to talk about his involvement, no suggestion that he had changed his mind in the short interval that had elapsed since he requested counsel before he agreed to waive his rights. *Cf.* Remarks of Yale Kamisar, Edwards v. Arizona *in the Lower Courts: Applying a Reinvigorated* Miranda, in 4 J. Choper, Y. Kamisar & L. Tribe, *The Supreme Court: Trends and Development 1981–1982* at 107, 108 (1983) (once suspect has asserted right to counsel, suspect must show change of mind without coercion or probing of officers in order to have "initiated" exchange within meaning of *Edwards*). In short we see no evidence of anything, external or internal, that would support a finding of a "knowing and intelligent" abandonment of the position taken so clearly so recently, much less a finding that the government had successfully carried its heavy burden.

The case seems to us very little different from one where the "dialogue" consisted solely of a suspect asking one question concerning the nature of the charges against him. If such were to be held an "open Sesame", the opportunities for eviscerating all protective discipline and restraint in custodial interrogation would be immense. This case illustrates the accelerating speed with which one descends a slippery slope. After answering affirmatively appellant's question whether all guns fired, agent Sherman, without renewing any warning, asked: "Why do you want to know?" The relevant inquiry here is: why did the agent want to know appellant's thinking? One neutral possibility is sheer idle curiosity. But the other possibilities are not neutral: (1) to keep the conversation going in the hope that something would turn up; and (2) to elicit incriminating information. There is no proper justification.

In the instant case, once the agent's question was put, appellant's answer, that "the sawed-off" was in pieces might have been incriminating. The weapon had been found, disassembled, in a duffel bag in the bedroom of the house where appellant had been arrested the previous December. It is unclear whether appellant could have observed at the time that the shotgun was taken out of the duffel bag in pieces.[1] If he could have, his answer to agent Sherman—that it was in pieces—did not add to the case against him. But the agent continued the chat, saying, "That is right, but it only took a minute to put together." Then appellant proceeded to dig himself in by showing his intimate knowledge of the weapon ("Ya, but it was missing a spring.") a fact relevant to prove that he possessed it. The agent replied that the gun test fired and then added, we can only conclude, calculatedly: "Did you have any problems firing the gun?"—a question which, whether answered "yes" or "no", would entrap appellant into incriminating himself most directly. We view this colloquy as a not untypical case history of what is likely to happen if law enforcement officials are permitted without reiterating that further talk

1. This point was disputed on appeal. The government argued that appellant with others present in the house was confined to the living room at the time of the search and thus could not have observed that the shotgun was taken out of the duffel bag in pieces.

is not compelled, to use a suspect's simple, not-guilt-suggestive question as a license to launch a fishing expedition.

Our view of the case law suggests that, were we to conclude that appellant here had waived his rights to be silent and to have counsel with him, we would have staked out a position less respectful of a suspect's rights than the great majority of courts with whose decisions we are familiar. We have thought it convenient to examine the decisions of the courts of appeals cited by the Supreme Court in *Edwards v. Arizona, supra,* 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9 for the proposition that a valid waiver of an invoked right to counsel "is possible". All of the cited decisions finding waiver contained far more affirmative indications by the accused that he did not need counsel or was willing to talk than in the case at bar, and in most of the cases there was no question asked by the police after the accused had requested counsel.[2] The Court's recent decision finding waiver, *Ore-*

*gon v. Bradshaw, supra,* is readily distinguishable from our case. In response to the accused's initiation—"What is going to happen to me now?"—the police officer in *Bradshaw* gave a thorough reminder of the accused's Fifth Amendment rights before proceeding with the conversation:

"The officer answered by saying 'You do not have to talk to me. You have requested an attorney and I don't want you talking to me unless you so desire because anything you say—because—since you have requested an attorney, you know, it has to be at your own free will.'" —— U.S. at ——, 103 S.Ct. at 2833.

Furthermore, the incriminating statements in *Bradshaw* were not the result of interrogation, but of a voluntary polygraph examination, which was conducted only after the accused had signed a written waiver.

Here, the "totality of circumstances" reveals: (1) a suspect who, after checking the

---

**2.** 7th Circuit: In *White v. Finkbeiner,* 611 F.2d 186 (7th Cir.1979), the suspect had made an "off hand" request for counsel: then, after two days, officers approached to interrogate him on three occasions, first warning him, the suspect signing a waiver each time; when asked if he wanted counsel, the suspect replied, "I don't need a lawyer"). In *Kennedy v. Fairman,* 618 F.2d 1242 (7th Cir.1980), the accused, after asking to call his attorney, called him; later, on three separate occasions before being questioned and after receiving *Miranda* warnings, he told the officers that his attorney had advised him to talk.

9th Circuit: In *United States v. Rodriguez-Gastelum,* 569 F.2d 482 (9th Cir.1978) (en banc), the court found that although a Spanish-speaking suspect had just requested an attorney, when, on being immediately asked, "Do you want to talk to me now without an attorney?" he answered, "That's fine", he had waived his request. Although we include this case as involving a more affirmative indication than the two questions asked by appellant in the case at bar, we do not subscribe to its holding on the facts. We observe that the clear focus of the majority opinion was the abandonment of a per se rule, which had been adopted by a panel of the court, barring any possibility of waiver if counsel had been requested. No analysis was made of the factual issue.

4th Circuit: In *United States v. Grant,* 549 F.2d 942 (4th Cir.1977), *vacated on other grounds sub nom. Whitehead v. United States,* 435 U.S. 912, 98 S.Ct. 1463, 55 L.Ed.2d 502 (1978), after a suspect requested an attorney,

an agent sought standard identification information unrelated to any crime; suspect then asked "What happens to me now? Where do I go? To Richmond?"; the agent responded and the suspect began asking about the bank robbery for which he had been arrested; the agent gave his version—asking no questions of his own; the suspect finally blurted, "[I]t is all true."

In *United States v. Hart,* 619 F.2d 325 (4th Cir.1980), a suspect, after his request for counsel, saw his parents, then phoned an agent, wishing to talk.

8th Circuit: In *United States v. Hauck,* 586 F.2d 1296 (8th Cir.1978), a suspect, after requesting counsel, was told he would probably have to go to Sioux Falls for counsel and perhaps stay overnight there; suspect said this was too much trouble and proceeded to talk; there were no instigating questions by an officer.

5th Circuit: In *Nash v. Estelle,* 597 F.2d 513 (5th Cir.1979) (en banc), what the court called an "equivocal request" for counsel ("I would like to have a lawyer, but I'd rather talk to you") avoided the application of that circuit's proscription of any interrogation after an unequivocal request; the district attorney's subsequent questioning to "clarify" the course elected by the suspect, resulting in the suspect explicitly confirming his willingness to proceed without a lawyer was held, over dissent, not to be error.

---

## 206

Advice of Rights form, refused to take the last step and waive those rights until he had seen his lawyer; (2) within a short time of his asking the agent a question in an effort to understand the extent of the charges against him; (3) a nonresponsive answer by the agent; (4) a second question by the suspect apparently addressed to the same end; (5) the initiation of questioning by the agent serving no legitimate purpose, and without being preceded by any renewed warning. We have found no appellate case that, under a similar combination of circumstances, has found or upheld a finding of waiver.

*Appellant's conviction is reversed.*