OPINION.
A Cincinnati police officer arrested appellee Steven Kleingers for driving under the influence in violation of R.C.4511.19(A)(1). He transported Kleingers to the District One police station to administer an intoxilyzer test. The officer read Kleingers his rights under Miranda v. Arizona.[1] He showed Kleingers the form containing the Miranda rights, but never placed the form in Kleingers's hands. According to the officer, Kleingers looked at the form and refused to sign it. He then handed Kleingers the Administrative License Suspension form (ALS) and read verbatim the "test and refusal consequences" of the form from another copy. Kleingers refused to sign that form as well. At that point, the officer asked Kleingers to take an intoxilyzer test. Kleingers stated that he wanted to contact an attorney. The officer provided him a telephone and a telephone book. Some time later, Kleingers told the officer, "That's okay. I'll just get an attorney when I go to court." He then refused to take the test. He later reconsidered and told the officer he would like to take the test if it were not too late. He took the test, failed, and was charged with operating a vehicle while being over the prohibited limit, a violation of R.C. 4511.19(A)(3). That charge is not involved in this appeal.
At that point, the officer advised Kleingers that he had some printed questions to ask him, and that he did not have to answer them if he did not want to. Kleingers answered the following questions: (1) whether he was operating the vehicle; (2) where he was going; (3) what street he was on; (4) which direction he was going; (5) where he started driving; (6) when he started; (7) when and what he had last eaten; (8) what he had been doing for the preceding three hours; (9) whether he had been drinking any alcoholic beverages (to which he responded, "No"); and (10) what and how much he had been drinking (to which he responded, "Two and one-half glasses of wine").
At that point, Kleingers stated that he was finished answering. The officer stated, "Well, I still have some more questions to ask. I'll just go ahead and ask. If you don't want to answer, just state refused, and I'll write refused, but I can't say you refused to answer my questions if I don't ask them." Kleingers refused to answer the next series of questions, until the officer asked him if he were taking "tranquilizers, pills, or medicines of any kind." Kleingers responded that he was. The officer asked him what kind, and Kleingers answered that he took Claritin and Percoset. Kleingers also answered the officer's question as to when he had taken his last dose. When the officer asked him how much he had taken, he responded, "As many as I can. If this sounds like I am being an asshole, it's because I am." He then refused to answer the next series of questions, except to acknowledge that he had four front false teeth.
Kleingers filed a motion to suppress a variety of evidence, including statements allegedly obtained in violation of his Fifth and Sixth Amendment rights to counsel. As to Kleingers's statements, the trial court suppressed those that he had made after he invoked his right to counsel, concluding that the state had failed to demonstrate that Kleingers had validly waived his right to counsel and his right to remain silent. The intoxilyzer test result was not suppressed.
The state has appealed the trial court's suppression order under Crim.R. 12(J), certifying that "the granting of the motion to suppress has rendered the State's proof, with respect to the pending charge, so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed." Certification "places an obligation on the prosecution to comply with the requirements of the rule."[2] While we could certainly question the veracity of the state's certification, we are precluded from doing so by State v. Bertram.[3] But we note that the state takes a large gamble when using this gambit because if the suppression order is affirmed, the defendant must be discharged.[4]
The state contends in its sole assignment of error that the trial court erred in granting Kleingers's motion to suppress because there was no evidence of police coercion, and because Kleingers's actions demonstrated that he had abandoned his Fifth and Sixth Amendment rights.
It is Kleingers's "Fifth Amendment right to have counsel present during interrogation to guard against self-incrimination," not his Sixth Amendment right to counsel, that is at issue under these facts.[5] As this court explained in State v.Echols,[6] the right to counsel guaranteed under the Sixth Amendment is premised on the accused's need to have effective representation in his defense and does not attach until a prosecution is commenced, i.e., until there is an indictment, information, arraignment or preliminary hearing.[7]
In contrast, the Fifth Amendment right to counsel is based on the principle that one should not be forced to be a witness against oneself and is designed to counteract a custodial interrogation's inherently compelling pressures.[8] Under the Fifth Amendment, an interrogation must stop if an accused indicates that he wishes to remain silent, and if the accused requests counsel, no interrogation may take place without counsel present.[9]
In reviewing the trial court's decision, we must keep in mind that "the waiver issue is a factual issue."[10] Thus, we must "defer `to the judgment of the trial court that has had the benefit of hearing the evidence and assessing the weight and credibility of the testimony.'"[11] Further, the state has the burden to demonstrate a waiver of the accused's Fifth Amendment right to counsel by a preponderance of the evidence.[12]
An accused who has expressed his desire to deal with the police only through counsel cannot be further interrogated unless he waives his earlier request for the assistance of counsel.[13] In determining compliance with this rule, a court must first determine whether the accused initially invoked his right to counsel. If the right was invoked, the court "may admit [an accused's] responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked."[14]
The initiation of further conversation with a police officer, as it is contemplated under Edwards v. Arizona, includes inquiries by the accused that "represent a desire * * * to open up a more generalized discussion relating directly or indirectly to the investigation."[15] An inquiry such as "what is going to happen to me now?" was held by the court in Oregon v. Bradshaw to have "evinced a willingness and a desire for a generalized discussion about the investigation" under the facts of the cases[16] In that situation, the accused had invoked his right to counsel and was being transported to another facility. During the ride, he asked the officer, on his own initiative, "What is going to happen to me now?" The officer answered, "You do not have to talk to me. You have requested an attorney and I don't want you talking to me unless you so desire because anything you say — because — since you have requested an attorney, you know, it has to be at your own free will."[17] It was only after the accused told the officer that he understood that they had the generalized conversation.[18]
In this case, Kleingers stated to the officer that he wanted to take the test if it were not too late. At that point, the officer started to conduct the interview consisting of the questions that we have previously identified. But giving intoxilyzer evidence is nontestimonialKan agreement to take a test cannot be the predicate to infer that one has waived his right to remain silent or not to be interrogated without counsel present. We do not believe that an accused's statement that he is willing to take an intoxilyzer test evinces a desire on his part for a generalized discussion concerning the investigation. To ascribe such significance to the expression of willingness to submit to an intoxilyzer test would eviscerate the safeguards set forth inMiranda. Although the First Circuit Court of Appeals in UnitedStates v. Montgomery[19] was not considering whether an agreement to take an intoxilyzer test could waive Fifth Amendment rights, we find the court's following conclusion relevant: "If such were to be held an `open Sesame,' the opportunities for eviscerating all protective discipline and restraint in custodial interrogation would be immense. This case illustrates the accelerating speed with which one descends a slippery slope."[20] Kleingers's statement merely evidenced a willingness to provide physical evidence, not to invite discussion of his case in depth, i.e., to provide testimonial evidence. Thus, we are persuaded that Kleingers did not initiate further communications as contemplated by Arizona v. Edwards and Oregon v.Bradshaw, and that the trial court's decision was correct.
Although our analysis is complete at this point, we believe that even had we decided otherwise, the trial court was still correct in its conclusion that the state had failed to meet its burden to demonstrate that, under the totality of the circumstances, Kleingers intelligently and knowingly waived his right to counsel. Initiation of further communication alone does not constitute a waiver of the right to counsel.[21] "[I]t merely reopens the dialogue with the police."[22] Whether the accused has reopened dialogue with the police and whether he has waived a previous request for counsel are separate inquiries.[23] "[E]ven if a conversation taking place after the accused has `expressed his desire to deal with the police only through counsel,' is initiated by the accused, where reinterrogation follows, the burden remains on the prosecution to show that the subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation."[24]
Because the voluntariness of Kleingers's statement is not questioned on the basis of coercion, we focus on whether the waiver was knowing and intelligent. In that sense, the requisite level of understanding necessary to waive Miranda rights is such that the waiver be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[25] It is unclear under the facts and circumstances in this case whether Kleingers clearly comprehended his Miranda rights. After he was informed of his rights, he stated that he wanted to talk to an attorney. But when provided the opportunity, he said that he would contact one later, when he went "to court."
Next, although the state argues that Kleingers's refusal to answer some questions demonstrated a knowing waiver of his right to counsel, we do not believe that it was sufficient. Waiver will not be presumed.[26] Just as "waiver cannot be inferred from the simple fact [an accused] responded to interrogation,"[27]
waiver should not be inferred solely on the basis of Kleingers's refusal to answer some questions. Further, the only admonition the officer provided to Kleingers regarding the interrogation was that Kleingers did not have to respond if he did not want to. There was no advice provided to connect that statement to his right to counsel. And, as the trial court concluded, it is not clear what amount of time had elapsed between the opportunity given to contact an attorney and the resumption of questioning.
Third, after Kleingers asked if he could take the test—which, again, was not testimonial—the officer responded by initiating questions for the purpose of eliciting incriminating information.[28] When Kleinger stated that he did not want to respond, the officer informed him that he had to keep asking the questions, and that he could not indicate a refusal to respond unless Kleinger actually refused. (This was obviously improper because a refusal to answer an individual question could be used by the trier of fact to infer wrongdoing as easily as an affirmative answer in some cases.)
Last, the fact that Kleingers was provided with a statement of rights in the ALS form and then advised that the officer had some routine, printed questions to ask him, when considered along with Kleingers's questions concerning the consequences of the refusal to take the test, constituted sufficient grounds to support the trial court's conclusion that it was unclear whether Kleinger understood the difference between his Miranda rights and his ALS rights.
Although we recognize that not all questions asked during a custodial interrogation are covered by the Fifth Amendment, exempted questions are narrowly limited to "questions necessary for accurate and safe booking."[29] Routine booking questions do not include questions asked "for the purpose of eliciting incriminating responses."[30] Routine booking questions include whether an accused "has recently seen a physician, is taking medication, or has any medical condition requiring special treatment."[31] In contrast, the inquiry in this case about whether Kleingers was taking "any drugs, pills, or tranquilizers of any kind" "[was] designed to elicit an answer beyond what [was] necessary for safe booking."[32] As we have previously held, the majority of the questions posed to Kleingers were not routine booking questions.[33]
We overrule the state's assignment of error and affirm the trial court's order suppressing the statements Kleingers made after he had invoked his Fifth Amendment rights.
Judgmentaffirmed.
 Doan, P.J., concurs.
Gorman, J., dissents.
[1] Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602.
[2] State v. Bertram (1997), 80 Ohio St.3d 281, 284,685 N.E.2d 1239, 1241.
[3] State v. Bertram, supra, at paragraph two of the syllabus.
[4] See Crim.R. 12(J).
[5] See State v. Knuckles (1992), 65 Ohio St.3d 494, 496,605 N.E.2d 54, 56, fn 1. See, also, State v. Raglin (1998),83 Ohio St.3d 253, 263, 699 N.E.2d 482, 491, fn. 2, certiorari denied (1999), __U.S. __, 119 S.Ct. 1118.
[6] State v. Echols (June 26, 1998), Hamilton App. No. C-970272, unreported.
[7] See State v. Broom (1988), 40 Ohio St.3d 277,533 N.E.2d 682; State v. Clark (1988), 38 Ohio St.3d 252, 527 N.E.2d 844. (In fact, the Sixth Amendment right to counsel does not apply to a decision on whether to take an intoxilyzer test. McNulty v.Curry (1975), 42 Ohio St.2d 341, 328 N.E.2d 798.)
[8] State v. Echols, supra. But, see, State v. Mackey (Feb. 18, 1982), Portage App. No. 1142, unreported (when a person is subjected to custodial interrogation, a critical stage in the proceedings is reached, implicating the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel).
[9] Miranda v. Arizona at 474, 101 S.Ct. at 1627.
[10] State v. Jackson (1991), 57 Ohio St.3d 29, 35,565 N.E.2d 549, 557.
[11] Id., quoting Oregon v. Bradshaw (1983), 462 U.S. 1039,1051, 103 S.Ct. 2830, 2838 (Powell, J., concurring).
[12] State v. Cedeno (Oct. 23, 1998), Hamilton App. No. C-970465, unreported, citing Colorado v. Connelly (1986),479 U.S. 157, 168, 107 S.Ct. 515, 522.
[13] Edwards v. Arizona (1981), 451 U.S. 477, 484-485,101 S.Ct. 1880, 1885; see Cincinnati v. Gill (1996), 109 Ohio App.3d 580,582, 672 N.E.2d 1019, 1020.
[14] Smith v. Illinois (1984), 469 U.S. 91, 95, 105 S.Ct. 490,493.
[15] Oregon v. Bradshaw (1983), 462 U.S. 1039, 1045-1046,103 S.Ct. 2830, 2835.
[16] Id. at 1045-1046, 103 S.Ct. at 2835.
[17] Id. at 1042, 103 S.Ct. at 2833.
[18] Id. at 1046, 103 S.Ct. at 2835.
[19] United States v. Montgomery (C.A.1, 1983), 714 F.2d 201.
[20] United States v. Montgomery, (C.A.1, 1983), 714 F.2d 201,204.
[21] Oregon v. Bradshaw, supra.
[22] State v. Winston (Sept. 21, 1994), Lorain App. No. 93CA005697, unreported.
[23] Oregon v. Bradshaw at 1045, 103 S.Ct. at 2834-2835.
[24] Id. at 1044, 103 S.Ct. at 2834; accord State v. Clark,supra, at 261, 527 N.E.2d at 854.
[25] Moran v. Burbine (1986), 475 U.S. 412, 422,106 S.Ct. 1135, 1141; State v. Dailey (1990), 53 Ohio St.3d 88, 92,559 N.E.2d 459, 463.
[26] Miranda v. Arizona at 475, 86 S.Ct. at 1628.
[27] State v. Rowe (1990), 68 Ohio App.3d 595, 606,589 N.E.2d 394, 401.
[28] See State v. Sherman (Dec. 11, 1998), Hamilton App. No. C-970813, unreported.
[29] Id.
[30] Id.
[31] State v. Geasley (1993), 85 Ohio App.3d 360, 371,619 N.E.2d 1086, 1093.
[32] State v. Sherman, supra.
[33] See id.