**WILMANS et al. v. HARSTON, Sheriff.
No. 8689.)**

(Court of Civil Appeals of Texas. Dallas. Oct. 22, 1921.)

**I. Injunction ⟐118(1)—Attorney's petition to require sheriff to permit her to see clients confined in county jail held sufficient.**

In attorney's proceeding to require sheriff to permit her to see her clients confined in the county jail, petition *held* sufficient, on general demurrer, to show that plaintiff had clients confined in jail at time of suit.

**2. Pleading ⟐34(3)—Fair and reasonable presumption indulged in favor of petition on general demurrer.**

On a general demurrer, every fair and reasonable presumption must be indulged in favor of a petition.

**3. Prisons ⟐13—Sheriff should permit attorneys to see clients confined in jail at reasonable times under reasonable regulations.**

The sheriff must be permitted to exercise discretion and caution as to admitting attorneys to jail even for purpose of seeing clients, but should permit attorneys to see their clients at reasonable times and under reasonable regulations without undue or arbitrary restraint.

**4. Prisons ⟐13—Sheriff cannot arbitrarily deny a prisoner the privilege of conferring with counsel.**

The sheriff cannot arbitrarily deny a prisoner confined in jail the privilege of conferring with counsel.

Appeal from District Court, Dallas County; J. E. Gilbert, Judge.

Petition for mandatory injunction by Edith E. Wilmans and husband against Dan Harston, Sheriff. Judgment of dismissal, and petitioners appeal. Reversed and remanded.

Cecil L. Simpson, of Dallas, for appellants.

HAMILTON, J. On the 16th day of June, 1921, appellant filed a petition in the court below for a mandatory injunction against appellee. Appellant at the time was a practicing attorney in the city of Dallas, and sought the relief prayed for upon the theory that her legal and constitutional right to see her clients incarcerated in the Dallas county jail had been denied her, and that although she was entitled to see and consult with her clients so confined in said jail at reasonable and proper times, yet the right had been denied arbitrarily by appellee, the sheriff of Dallas county, who had custody of the jail.

The court refused to grant the temporary order prayed for, and from the judgment entered to that effect she has appealed.

The judgment of the court states the reason for the action in refusing to grant any relief to be that the petitioner made no allegation that she at the time had any client in jail, all allegations relating to matters then past.

Omitting formal parts of plaintiff's petition and parts immaterial here, it is as follows:

"(1) Plaintiff says that she is a resident and citizen of the county of Dallas, state of Texas, and that she is a regularly licensed practicing attorney at the Bar of Dallas County, Tex., and has been such for more than two years preceding the filing of this petition, and that defendant, Dan Harston, is the duly elected, qualified and acting sheriff of the county of Dallas, state of Texas, and has been for more than two years past, preceding the filing here-

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of, and that he is a resident and citizen of Dallas county, Tex.

"(2) Plaintiff shows the court that on or about the 25th day of April, 1921, plaintiff desired to communicate with her clients Mrs. Edith Bundy and Mrs. Ida Ott in the custody of said defendant or his deputies; that she made application to the said sheriff for permission to see them; that the said sheriff refused; that he told this plaintiff to get out of his office, and said the same in such a loud, ugly, and insulting tone of voice that this plaintiff suffered greatly by the humiliation and mental anguish sustained thereby.

"(3) Plaintiff further alleges that on or about the 28th day of April, 1921, she had an important communication to take to her client Mrs. Ida Ott, from co-counsel, Mr. Mike Lively, and that the defendant herein refused to allow this plaintiff to visit or see the said Mrs. Ida Ott, and that this plaintiff had to resort to an order from Judge C. A. Pippen to have the said Mrs. Ida Ott brought down to her for an interview.

"(4) That on a later date, to wit, on or about the 5th day of May, after having arranged with M. ——— Wisdon and Mr. ——— Carter to make bond for the said Mrs. Ott, plaintiff applied to the defendant's deputies for permission to see Mrs. Ott, which said permission was refused, and due to this fact and to the delay in getting in touch with her client, the said Mrs. Ott, one of the sureties, Mr. Carter, left the city and said efforts on the part of this plaintiff were frustrated, as she had to send word to the said Mrs. Ott by letter, and Mrs. Ott then and there sent her sister, Mrs. Wylie, to the office of this plaintiff, and the matter of the bond was considered through the said Mrs. Wylie instead of by direct communication with her client, Mrs. Ida Ott; the delay resulting in the failure of plaintiff to get Mr. ——— Carter as one of the sureties on said bond.

"(5) Plaintiff further shows that on or about the 17th day of May, after repeated efforts to get permission to see her client Mrs. Edith Bundy, for whom this plaintiff was prosecuting a suit in the civil district court of Dallas county, Judge E. B. Muse presiding for the Forty-Fourth judicial district, that defendant, after a final application of this plaintiff to see her said client, caused this plaintiff extreme embarrassment and humiliation, by saying to her in a very loud and ugly tone of voice, 'I absolutely refuse to allow you to see Mrs. Bundy or any one else in this jail,' and said the same in such an insulting and ugly manner that this plaintiff was caused very great humiliation and mental anguish, due both to the fact that many lawyers and bystanders were present, and to the fact that plaintiff has not been accustomed to being addressed in such brutal and insulting manner.

"(6) Plaintiff would show that she, in her relation with her clients as aforesaid as their attorney, is guaranteed the right, under and by virtue of the Constitution and laws of the United States and the Constitution and laws of the state of Texas, to visit and consult with her said clients, and that her said clients are guaranteed the right, under the Constitution and laws of the United States, and the Constitution and laws of the state of Texas, to have the services of an attorney and to have their at-

torney consult with them at such convenient times as may be proper in the place or places where they may be incarcerated; that the said defendant is by virtue of the laws of the state of Texas the custodian of the county jail building, where the said clients of plaintiff are confined, and where other of her clients may be from time to time confined, and that because of his refusal to permit plaintiff to interview and consult with her said clients, and by his arbitrary refusal to permit her to enter said building, which is a public building, the clients of plaintiff have been deprived of their lawful rights, and plaintiff is deprived of same, greatly to her damage in her profession to a large amount, which amount she is unable to estimate, but same exceeds the sum of $1,000, and to the damage and injury of her said clients, and such of her clients as may be confined in said jail building."

[1] While the petition is more or less obscure and in many respects altogether vague and lacking in specific allegations of an existing wrong and consequent injury, still we do not believe it can be said that it is obnoxious to a general demurrer. Such being the case, we think the court erred in refusing to grant the writ solely upon the ground that the petition contained no allegations of present or existing impairment of appellant's rights.

[2] In construing a petition in the light of a general demurrer, every fair and reasonable presumption must be indulged in its favor.

We think the allegation that appellant represents Mrs. Bundy, considered in connection with the allegation that appellant's clients are confined in the county jail, and that the appellee refused to allow her to see Mrs. Bundy or any one else confined in the jail, and substantially that he did it in a willful and an arbitrary manner, is sufficient, in the absence of a special exception, to be considered as an allegation of a continuing denial of a specific existing right to confer with a particular client. It is fairly deducible from the petition that Mrs. Bundy is appellant's client, that she is confined in jail at this time, and that appellee arbitrarily denies appellant the right to consult with her client at reasonable times and under reasonable conditions and limitations.

[3] The sheriff, as custodian of the prisoners of a county, must be permitted to exercise discretion and caution as to admitting attorneys to the jail, even when they go there in the discharge of their professional duties to their clients, and a petition for the harsh remedy here sought ought to reveal that he has gone beyond such limitations. On the other hand, it is a matter of grave public concern, as well as a matter of undeniable right and privilege belonging to an attorney as an officer of the courts, that he shall be permitted, without undue or arbitrary restraint, to counsel with the unfortun-

ate victims of the law's constraint who have such attorney under employment.

We therefore think that if proof had been heard to the effect that at the time the injunction was sought Mrs. Bundy was appellant's client, that she was then confined in the jail which is supervised and controlled by appellee, and that he had arbitrarily refused to permit appellant at reasonable times and under reasonable regulations to see and discuss with Mrs. Bundy a case pending for her, and continued such attitude, then such proof would have been in conformity with the allegations; for, if the allegations are indulgently rather than critically considered, they fairly indicate that appellant is now under professional employment by a prisoner to whom the proper discharge of duty can be performed only by the right of reasonable consultation being recognized.

[4] Certainly the sheriff could not arbitrarily deny a prisoner the privilege of conferring with counsel. No person, whether he be a peace officer or not, who has custody of a prisoner, can willfully deny such prisoner the right to consult with or communicate with his lawyer, nor can he prevent the prisoner from obtaining his attorney's advice concerning any of his legal rights. Hamilton v. State, 68 Tex. Cr. R. 419, 153 S. W. 336. In a reciprocal sense the right of the attorney to see and consult with his client is the same.

The due and orderly administration of justice requires that the rights and privileges of attorneys who are officers of the courts be protected with zealous care against undue infractions of a nature which are calculated to deny prisoners whom they represent the advice and aid of counsel; and since we believe that a liberal construction of appellant's petition, vague and obscure though it is, reveals allegations which, if the trial court should upon hearing the evidence believe to be true, would justify granting the relief sought, we will reverse and remand the cause.