**UNITED STATES of America, Appellee,**

v.

**Augustine GUIDO, Appellant.**

**No. 823, Docket 82–1356.**

United States Court of Appeals, Second Circuit.

Argued Feb. 1, 1983.

Decided March 31, 1983.

Anne Feigus, New York City (Ronald P. Fischetti, New York City, of counsel), for appellant.

Ephraim Savitt, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Jane Simkin Smith, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before FEINBERG, Chief Judge, KEARSE, Circuit Judge and RE, Chief Judge, United States Court of International Trade.*

FEINBERG, Chief Judge:

Augustine Guido appeals from a judgment of the United States District Court for the Eastern District of New York, I. Leo Glasser, J., following a jury trial. Guido was convicted of distribution of heroin, in violation of 21 U.S.C. § 841, and conspiracy to distribute heroin, in violation of 21 U.S.C. § 846. He was sentenced to eight years in prison, to be followed by ten years' special parole.

In April 1982, appellant was arrested in a friend's apartment by five DEA agents. The agents informed Guido that he was under arrest for having violated the federal narcotics laws, and read him his *Miranda* rights. Guido indicated that he understood his rights, and requested that he be allowed to call his attorney before leaving the apartment. The agents refused, but permitted him to ask a friend who was present to make the call for him. Guido was then taken to the Eastern District courthouse for processing. Guido asked during the ride what the arrest was about, and was again told that it was a narcotics arrest. He was also told that he should consider cooperating with the authorities in their investigation, and that he should discuss the possibility of cooperation with his attorney.

After reaching the courthouse, Guido was taken to an interview room for processing, which includes the taking of photographs, fingerprints, and a personal history. At this point, a DEA agent told Guido the arrest involved the sale of heroin. Guido asked the time and location of the sale and was told it occurred the previous summer in the area of Court Street in Brooklyn. Guido then asked if the sale took place at a candy store, and when the agent answered that it did, Guido exclaimed: "Oh Christ. Okay. I knew that one was trouble." Ac-

cording to Guido, this statement was obtained in violation of his Fifth and Sixth Amendment rights, and should have been suppressed prior to trial. The introduction of the statement into evidence forms the basis for Guido's appeal.

■ As an initial matter, we note that the incident at issue took place shortly after appellant's arrest and prior to his arraignment and indictment. Since the Sixth Amendment right to counsel attaches only after the filing of formal charges, appellant's incriminating statement, if protected at all, is protected by the Fifth Amendment rather than the Sixth. See *United States v. Duvall*, 537 F.2d 15, 20–22 (2d Cir.), cert. denied, 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

■ Guido's Fifth Amendment claim turns on whether his incriminating statement was volunteered or the product of interrogation. It is undisputed that when Guido was taken into custody, he requested the assistance of counsel before he made the statement at issue. Judge Glasser found at the suppression hearing that the defendant requested an attorney at least twice, and possibly as many as five times. Under the circumstances, it is clear that the arresting agents were not entitled to question Guido about the case. As the Supreme Court stated in *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966), "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." But it is also clear that voluntary statements made by a suspect who understands his rights are not prohibited:

The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated.... Volunteered statements of any kind are not barred by the Fifth Amendment ....

* Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

Id. at 478, 86 S.Ct. at 1630; see also *United States v. Carpenter,* 611 F.2d 113, 117 (5th Cir.), cert. denied, 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980) (spontaneous, unprovoked incriminating statement is admissible).

The standard for determining whether a statement is the product of interrogation is outlined in *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–1690, 64 L.Ed.2d 297 (1980) (footnotes omitted):

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. This is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

In *Innis,* a suspect volunteered to show police the location of a shotgun after hearing several officers discuss the possibility that children attending a nearby school for the handicapped might find the gun and accidentally injure themselves. The Court held that there was no "express questioning" and that the officers could not have known that the conversation was likely to trigger an incriminating response, since there was no suggestion that the officers were aware that Innis was "peculiarly susceptible" to such an appeal. *Innis,* supra, 446 U.S. at 302, 100 S.Ct. at 1690. Accordingly, the Court concluded that the officers' conversation did not constitute interrogation.

Appellant does not contend that he was subject to express questioning, but rather that he was subject to its "functional equivalent." He argues that the discussion of cooperation initiated by the agents while transporting him to the Eastern District was intended to elicit incriminating information and was inherently a form of interrogation. Appellant claims that his subsequent statements in the courthouse must be viewed in this context. At the very least,

Guido argues, his incriminating statement was a foreseeable result of the agents' conduct, and therefore inadmissible under *Innis.*

■ We are not persuaded by these arguments. We do not accept the proposition that a discussion of cooperation is inherently a form of questioning for purposes of *Miranda.* Cf. *United States v. Thierman,* 678 F.2d 1331, 1336–37 (9th Cir.1982) (officers' discussion of possible consequences of suspect's failure to cooperate held not to constitute interrogation even though one officer "guessed" he was attempting to get suspect to respond); *United States v. Hart,* 619 F.2d 325 (4th Cir.1980) (per curiam). Nor is there sufficient reason on this record to reverse the conclusion of the trial judge that Guido's statement was not the product of interrogation. While the agents did suggest that Guido cooperate in the investigation, they apparently also told him he should discuss this possibility with his attorney, and they indicated that Guido would not be questioned about the case at that time. There is no indication that the agents' conduct was "designed to elicit an incriminating response," *Innis,* supra, 446 U.S. at 302 n. 7, 100 S.Ct. at 1690 n. 7, or that Guido was "peculiarly susceptible" to an appeal to cooperate, id. at 302, 100 S.Ct. at 1690.

During the discussion at the courthouse, the agents merely supplied Guido with general information regarding the crime he was suspected of committing, in response to Guido's own questions. The Fourth Circuit has held that *Miranda* does not bar police from answering a suspect's questions about a crime alleged, even after he has requested counsel, and that if the suspect then makes a formal waiver and confession it is admissible. See *United States v. Grant,* 549 F.2d 942, 947–48 (4th Cir.), cert. denied, 432 U.S. 908, 97 S.Ct. 2955, 53 L.Ed.2d 1081 (1977), vacated on other grounds sub nom. *Whitehead v. United States,* 435 U.S. 912, 98 S.Ct. 1463, 55 L.Ed.2d 502 (1978). Moreover, other courts, in finding that a suspect validly waived his Fifth Amendment rights, have held that furnishing a suspect with details of the evidence against him after he has

requested counsel does not constitute interrogation within the meaning of *Miranda.* See, e.g., *United States v. Pheaster,* 544 F.2d 353, 366–68 (9th Cir.1976), cert. denied, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *United States v. Hodge,* 487 F.2d 945, 946–47 (5th Cir.1973) (per curiam); cf. *United States v. Boston,* 508 F.2d 1171, 1175 (2d Cir.1974), cert. denied, 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975). A fortiori, the officers' responses to Guido's questions, even when viewed in light of the earlier suggestion that he cooperate, do not amount to interrogation. Since we agree with the trial judge that Guido's incriminating statement was volunteered, and not the product of interrogation, we need not consider the government's powerful argument that the statement was merely cumulative in light of the overwhelming evidence of Guido's guilt.

Appellant urges us to adopt the "New York rule," which prohibits an uncounseled waiver of the Fifth Amendment privilege "once a suspect in custody requests the assistance of counsel" or once "formal adversary proceedings" have begun. *People v. Cunningham,* 49 N.Y.2d 203, 424 N.Y.S.2d 421, 400 N.E.2d 360 (1980); cf. *People v. Settles,* 46 N.Y.2d 154, 412 N.Y.S.2d 874, 385 N.E.2d 612 (1978). But the New York rule is based on the state, not the federal, constitution. See *Cunningham,* supra, 49 N.Y.2d at 207, 424 N.Y.S.2d 421, 400 N.E.2d 360. Further, as noted earlier, this court has held that the right to counsel does not attach on the filing of a complaint and the issuance of an arrest warrant. *Duvall,* supra, 537 F.2d at 22. In any event, the New York rule does not proscribe a " 'spontaneous', blurted-out admission" of the sort at issue here. See *Cunningham,* supra, 49 N.Y.2d at 210 n. 2, 424 N.Y.S.2d 421, 400 N.E.2d 360. Accordingly, we do not find the New York rule, or its policy basis, applicable to this case.

 Although we find that Guido's statement was not rendered inadmissible by the Fifth Amendment privilege, we note that the DEA agents in this case appear to have been unduly slow in granting Guido's repeated requests to call his attorney. Legitimate security concerns may have prompted the arresting agents to deny Guido's initial request to call his attorney while still at the apartment where he was arrested. But we see no valid reasons apart from administrative convenience to prevent a suspect from calling his attorney once he is brought to a courthouse for processing. In our view, the accused's interest in obtaining the prompt assistance of counsel outweighs any such administrative concerns. In this case, we see no substantial evidence in the record to suggest that the officers delayed Guido's access to an attorney in the hope that he might incriminate himself. Moreover, Guido was allowed to call his attorney within approximately one to one-and-a-half hours of his arrest. Under these circumstances, we cannot say that the delay was egregious. Nonetheless, we think the better procedure would have been to permit Guido to call his attorney on Guido's arrival at the Eastern District courthouse, and we expect that such requests will be so honored in the future.

We have considered all of appellant's arguments, and they do not persuade us to reverse. Judgment affirmed.