Tommy Wayne DUNN, Appellant,

v.

The STATE of Texas, Appellee.

No. 248–84.

Court of Criminal Appeals of Texas, En Banc.

June 26, 1985.

---

Mike DeGeurin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Winston E. Cochran, Jr., Ray Fuchs & Joe Magliolo, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

This is an appeal from a conviction of murder. See V.T.C.A. Penal Code, Sec. 19.02(a)(1). The trial court assessed punishment at 99 years confinement in the Texas Department of Corrections, after a bench trial.

On direct appeal the Waco Court of Appeals in an unpublished opinion rejected appellant's contentions that the trial court erred in admitting appellant's written confession into evidence and that the State had failed to sustain its burden of showing that the confession was given knowingly and voluntarily. See *Dunn v. State*, No. 10–83–100–CR, delivered January 12, 1984.

We granted the appellant's petition for discretionary review in order to determine what appear to be two closely interwoven issues: (a) whether the right of an accused pursuant to *Miranda v. Arizona*[1] to have counsel present during custodial interrogation may be invoked by a party other than

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the accused; and (b) whether the failure of law enforcement officials to notify the accused that counsel, who has been retained by a third party or parties, and is close at hand, negates the knowing and voluntary nature of the waiver of the right to presence of counsel pursuant to *Miranda* and its progeny? We will reverse the court of appeals.

A brief recitation of the facts of the case is necessary. On the day following his father's death, appellant was contacted by Detective Kent who requested that he come to the Houston Police Department after work. After closing his business, appellant appeared at police headquarters around 6:00 p.m. and was informed by Kent that he was a suspect in his father's murder. He was then given an oral *Miranda* warning. The evidence shows appellant was in his mid-thirties, a high school graduate with some junior college credits, and a businessman. Kent testified he would not have allowed appellant to leave police headquarters until he participated in a lineup, which occurred around 6:30 p.m. The lineup was completed shortly before 7:00 p.m., and appellant returned to the homicide office with Kent, where he was given a second oral warning of rights under *Miranda*. Following three hours of questioning by Kent and Detective Dunn, Kent began to type appellant's three-page confession at 10:35 p.m. on October 13, 1981. After appellant read, corrected and initialed the document, he read and initialed a third *Miranda* warning printed at the top of his confession and signed the confession at 12:17 a.m. on October 14th. At the time he signed his confession, appellant was unaware that police officers had prevented two lawyers from contacting him while he was being questioned.

The attorneys had not arrived at police headquarters on their own initiative. Appellant's wife contacted attorney Schultz at 10:00 p.m. on October 13th and requested that he go to police headquarters to locate her husband and represent his interests. She became concerned after learning from one of appellant's employees that he had gone to police headquarters after closing his business for the day. Schultz, who had previously represented appellant and his wife in a commercial matter, called attorney Schneider, a criminal law specialist, and asked Schneider to accompany him to the police department. According to Schneider, he immediately phoned Detective Dunn at police headquarters around 10:15 p.m. and told Dunn that he "didn't want them to talk to [appellant] while I was not there and I would be there in a few minutes." In his testimony, Detective Dunn did not recall the details of the phone conversation as recounted by Schneider.

The two attorneys arrived at the homicide office shortly before 11:00 p.m. and immediately talked to Detective Cook who issued them a jail "pass" to see appellant. Upon going to the jail area and presenting the pass, the attorneys were told that appellant was not in jail. Schultz phoned appellant's wife to see if she had heard from appellant or determined his whereabouts, while Schneider returned to the homicide office where Lt. Zoch said that appellant was in an adjacent room being questioned. Schultz rejoined Schneider in the homicide office, and they demanded the right to see appellant. When this request was refused, the attorneys requested Zoch inform appellant they were outside if he desired their assistance. This request was also denied. The attorneys then proposed that appellant be given Schultz's business card, which Zoch refused to do.

Zoch had phoned Assistant District Attorney Holleman to inquire whether the attorneys had a right to see appellant. Holleman advised Zoch that if appellant had waived his right to counsel the attorneys did not have the right to interrupt questioning and talk to appellant. Zoch informed Schneider and Schultz that he was denying their request after having "checked it out with the District Attorney's office." Schneider phoned Holleman and requested that he advise police officers to tell appellant they were there or give appellant the attorney's business card, but Holleman refused. In a last-ditch effort to contact appellant, Schneider used a phone

to send telegrams to the police chief, Detective Dunn, Zoch and to appellant, but the telegrams were never delivered. Appellant signed his confession at 12:17 a.m. on October 14th, and the attorneys were allowed to see appellant at approximately 12:30 a.m.

Zoch testified he refused to allow the attorneys to contact appellant because appellant had not asked for legal counsel after being given his *Miranda* warnings, and "I would not allow [the attorneys] to interfere with the investigation at that point." The following portion of Zoch's cross-examination summarizes his reason for refusing the attorneys' requests:

"Q. So, now, what do you mean by interfere in the investigation?

"A. Well, Detective Kent was conducting an interview with [appellant]. [Appellant] had been advised of his rights and was cooperating. And at that point we saw no reason to upset the boat, so to speak. Now, the gentleman was wanting—he was talking. He was talking freely and willingly, and I saw no point in stopping the investigation at that point.

"Q. You thought that perhaps, if he had an opportunity to consult with his lawyer, that he might break off the statement, is that correct?

"A. That is—yes, sir, that's correct." Appellant tried unsuccessfully to suppress his confession at a pre-trial hearing.

The court of appeals found: *"Miranda* does not expressly or inferentially require police to inform an accused, who has been given the basic *Miranda* warning, that legal counsel is present at the police station and trying to contact him, before any waiver of his rights under the Fifth Amendment can be deemed knowingly and intelligently made."

## SIXTH AMENDMENT CLAIM

■ Appellant contends, inter alia, that his Sixth Amendment right to counsel was violated by the admission of his confession into evidence. In the instant case, at the time appellant signed his confession, judicial proceedings had not been initiated against him. The mere arrest and subsequent questioning of a person do not constitute a sufficient formalization of proceedings to trigger the requirement of counsel under the Sixth Amendment. The Sixth Amendment right to assistance of counsel does not come into play until "at or after the time adversary judicial proceedings have been initiated against (the accused), 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" See *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977), quoting *Kirby v. Illinois*, 406 U.S. 682, 690, 92 S.Ct. 1877, 1881–83, 32 L.Ed.2d 411, 417, 418 (1972); *Tarpley v. Estelle*, 703 F.2d 157 (5th Cir.1983). Thus, it is only when "the government has committed itself to prosecute" that the defendant is entitled to counsel, *Tarpley v. Estelle*, supra, at 162, under the Sixth Amendment. See also *United States v. Dobbs*, 711 F.2d 84, 85 (8th Cir.1983); *United States v. Franklin*, 704 F.2d 1183, 1189 (10th Cir.1983); *United States v. Guido*, 704 F.2d 675, 676 (2d Cir.1983); *Logan v. Shealy*, 660 F.2d 1007, 1012 (4th Cir.1981), cert. denied, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *United States v. Traficant*, 558 F.Supp. 993, 996 (N.D.Ohio 1983).

■ In the instant case, no "judicial proceeding" of any kind had been instituted by the police against appellant, thus no viable Sixth Amendment claim has been demonstrated.

## FIFTH AMENDMENT CLAIM

### I. INVOCATION OF FIFTH AMENDMENT RIGHTS

Appellant additionally contends that the court below rendered a decision in conflict with other jurisdictions that have addressed the issue of whether a party other than a defendant may invoke the right to counsel under *Miranda*, viz: *Weber v.*

*State,* 457 A.2d 674 (Del.1983); *State v. Matthews,* 408 So.2d 1274 (La.1982); *Commonwealth v. McKenna,* 355 Mass. 313, 244 N.E.2d 560 (1969); *People v. Rogers,* 48 N.Y.2d 167, 422 N.Y.S.2d 18, 397 N.E.2d 709 (1979); *People v. Arthur,* 22 N.Y.2d 325, 292 N.Y.S.2d 663, 239 N.E.2d 537 (1968); *People v. Donovan,* 13 N.Y.2d 148, 243 N.Y.S.2d 841, 193 N.E.2d 628 (1963); *State v. Haynes,* 288 Or. 59, 602 P.2d 272 (1979); *Commonwealth v. Hilliard,* 471 Pa. 318, 370 A.2d 322 (1977).

We are not persuaded by these cases relied upon by appellant because of the following persuasive language found in *Fuentes v. Moran,* 572 F.Supp. 1461 (D.R. I.1983), aff'd 733 F.2d 176 (1st Cir.1984); viz: "The sockdolager is simply this: Petitioner's right against self-incrimination is personal; it cannot be invoked or waived by anyone other than the person to whom the right attaches." 572 F.Supp. at 1469. This view is shared by other state jurisdictions, see e.g., *State v. Johns,* 185 Neb. 590, 177 N.W.2d 580 (1970); *State v. Smith,* 294 N.C. 365, 241 S.E.2d 674 (1978); *Ohio v. Chase,* 55 Ohio St.2d 237, 378 N.E.2d 1064 (1978); *State v. Burbine,* 451 A.2d 22 (R.I.1982).

Of particular significance is the reasoning employed by the Rhode Island Supreme Court in *State v. Burbine,* supra. In *Burbine,* the relevant facts developed thusly:

Police officers who were investigating a homicide received a telephone call from a public defender informing them that the defendant Burbine was represented by another attorney in the public defender's office; these officers were informed that the public defender in question was not available; the officers were informed that the public defender then speaking to them would act as defendant's legal counsel, in the event that the officers intended to place the defendant in a lineup or question him; the officers in question never informed the defendant of this telephone call from the public defender's office; defendant Burbine then proceeded to give three confessions admitting his complicity in the homicide; and the defendant Burbine contended

that all three confessions should have been suppressed on the ground that they were obtained in violation of his right to counsel and his privilege against self-incrimination. The Rhode Island Supreme Court, in finding defendant Burbine's written and verbal waivers of his right to remain silent and his right to counsel knowing and intelligent, observed:

"Nothing in the *Miranda* opinion or in succeeding cases has indicated that the right to counsel may be asserted by any one other than the accused. The strength of *Miranda* lies in its simplicity. It was designed as a set of sharp-bright line directions which police officers could easily follow. It was not dependent on the fortuitous circumstance exhibited in *Escobedo* whose very limited application it transcends and supercedes. Even such a robust exponent of the rights of the accused as Professor Yale Kamisar points out the weak congruence between a defense lawyer's entry into the proceedings and the suspect's need for a lawyer's help:

" 'Whatever its symbolic value, a rule that turns on how soon a defense lawyer appears at the police station or how quickly he "spring[s] to the telephone" hardly seems a rational way of reconciling the interest of the accused with those of society.' [citation omitted].

"Consequently, we are of the opinion that the principals of *Miranda* place the assertion of the right to remain silent and the right to counsel upon the accused, and not upon benign third parties, whether or not they happen to be attorneys." *Burbine* at pg. 28.

As appellant accurately points out, this case presents a case of first impression to this Court on this issue. However, though the factual situation is certainly distinguishable, the ultimate rationale applied in *Kelly v. State,* 621 S.W.2d 176 (Tex.Cr.App. 1981), is closely akin to that employed in *State v. Burbine,* supra.

In *Kelly,* supra, the defendant and his brother were arrested by Fort Worth police officers and questioned in reference to a

homicide. While in custody, and after being questioned at some length by police officers, the defendant was allowed to visit with his mother and brother for quite some period of time. The defendant's mother made several unsuccessful attempts to contact an attorney in the presence of the defendant and in the presence of the questioning officers. One of the officers (Meyer) testified that he made no effort to assist the defendant's mother in contacting an attorney. After some additional time had passed, the defendant gave a written, signed confession. One of the defendant's contentions at the hearing on his motion to suppress his confession was, although the detective who questioned him was aware of the fact that defendant's mother made at least two unsuccessful attempts to contact an attorney, the detective nevertheless proceeded to obtain a confession from the defendant. Presiding Judge Onion, writing for this Court and addressing this contention, observed:

"In applying these rules to the situation presented by Meyer's testimony, we first observe that appellant neither *personally* advised Meyer of his desire to consult an attorney nor *personally* attempted to contact one. We decline to equate an attempt by a member of the family of an accused to contact a lawyer, which is overheard by police officers, with an indication by the *accused* that he desires consultation with counsel prior to any questioning. Appellant's mother may have acted on her own despite the indifference or even opposition of her son. No violation of *Miranda*, supra, is shown." [emphasis added] *Kelly*, 621 S.W.2d at pg. 180.

■ We conclude from the rationale employed in *State v. Burbine*, supra, *Kelly*, supra, and *Fuentes v. Moran*, supra, that an accused's right against self-incrimination is personal, and cannot be invoked or waived by anyone other than the accused.

## II. KNOWING AND VOLUNTARY WAIVER OF FIFTH AMENDMENT RIGHTS

■ Closely related, yet distinctly different, from the first Fifth Amendment issue

on page 1 ante, is the analysis of the second Fifth Amendment issue presented, viz: whether the failure of law enforcement officials to notify the accused that counsel, who has been retained by a third party or parties and is close at hand, negates the knowing and voluntary nature of the waiver of the right to presence of counsel pursuant to *Miranda*, supra, and its progeny. The analysis of this issue must necessarily begin with the premise that this Court has in the past basically followed the mandates of the Supreme Court of the United States in cases involving custodial interrogation. See, e.g., *Kelly*, supra, including both the state and federal cases chronicled therein. If we decide to depart from the path laid down by the Supreme Court in a case where an accused has not exercised his right to remain silent or his right to counsel, we should "consider the balance of interest between society's need for reasonable law enforcement as against the accused's right to remain silent and to assert his privilege against self-incrimination." *State v. Burbine*, at pg. 29.

The cases are legion throughout the various federal circuits to the effect that, notwithstanding the knowledge of law enforcement officials that a suspect is represented by counsel or is planning to engage counsel, questioning may proceed without the attendance or acquiescence of the attorney *so long as a valid waiver has been secured.* [emphasis added.] *Hance v. Zant*, 696 F.2d 940, 947 (11th Cir.1983); *United States v. Brown*, 569 F.2d 236, 238–39 (5th Cir.1978) (en banc); *Moore v. Wolff*, 495 F.2d 35, 37 (8th Cir.1974); *United States v. Cobbs*, 481 F.2d 196, 199–200 (3rd Cir.1973), cert. denied, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973); *United States v. Zamora-Yescas*, 460 F.2d 1272 (9th Cir.1972), cert. denied, 409 U.S. 881, 93 S.Ct. 210, 34 L.Ed.2d 136 (1972); *United States v. Gordon*, 493 F.Supp. 808, 812 (N.D.N.Y.1980), aff'd on other grounds, 655 F.2d 478 (2d Cir.1981); see *United States v. Monti*, 557 F.2d 899, 904 (1st Cir.1977).

■ It is axiomatic that the burden of establishing waiver "is on the government

and is a heavy one." *United States v. Montgomery,* 714 F.2d 201, 203–204 (1st Cir.1983). "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

■ In the instant case, the question of voluntariness of the waiver is pretty easily settled. The trial court found and the evidence is overwhelming that appellant was admonished of his right to remain silent and of his right to retained or appointed counsel on at least three occasions. There is no evidence that appellant was ignorant, confused, or intimidated. The appellant had not been traumatized by forcible arrest, but instead had come to the police station voluntarily and at his own convenience. Throughout his interview with police, the appellant was cooperative and was described as being "calm, cool and collected." In the face of this evidence, we find that appellant's confession was given voluntarily.

■ The difficult question, and apparently one of first impression presented to this Court, is whether, given the fact that attorneys hired by appellant's wife were present seeking to counsel with appellant, the waiver was obtained *knowingly?*

In solving this query, it is necessary for us to examine that "quantum of information necessary for the accused to make an informed decision as to waiver." *State v. Burbine,*[2] at pg. 29.

In his brief, the appellant urges this Court to adopt the per se rule established by the Delaware Supreme Court that "if prior to or during custodial interrogation, and unknown to the suspect, a specifically retained or properly designated lawyer is actually present at a police station seeking an opportunity to render legal advice or assistance to the suspect, and the police intentionally or negligently fail to inform the suspect of that fact, then any statement obtained after the police themselves know of the attorney's efforts to assist the suspect, or any evidence derived from any such statement, is not admissible on any theory that the suspect intelligently and knowingly waived his right to remain silent and his right to counsel, as established by *Miranda,* supra." *Weber v. State,* supra, at pg. 686.

This rule, coupled with the absolutist per se rule adopted in the State of New York in *People v. Donovan,* 13 N.Y.2d 148, 193 N.E.2d 628, 243 N.Y.S.2d 841 (1963), *People v. Arthur,* 22 N.Y.2d 325, 239 N.E.2d 537, 292 N.Y.S.2d 663 (1968), and *People v. Hobson,* 39 N.Y.2d 479, 348 N.E.2d 894, 384 N.Y.S.2d 419 (1976) is not in any way mandated by the Supreme Court in *Miranda,* supra, wherein the formulation of the now axiomatic *Miranda* "warnings" was followed by the statement "this does not mean, as some have suggested, that each police station must have a 'station house lawyer' present at all times to advise prisoners." *Miranda,* supra, 384 U.S. at 474, 86 S.Ct. at 1628. We therefore specifically decline to accept the invitation of appellant to adopt either the *Weber* rule or the New York rule.

■ We believe the more rational approach in assaying the validity of the waiver relied upon by the State, is for this Court to examine all of the pertinent facts and circumstances of the case, including but not limited to the relationship of the suspect to the attorney, the extent of the knowledge possessed by the authorities, the conduct of the authorities, the nature of the lawyer's request, and "the background, experience and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

**2.** The defendant in *Burbine* is currently litigating the waiver issue presented in this case in the United States Supreme Court, having pursued Federal habeas corpus remedies after losing his appeal in the Rhode Island Supreme Court. See *Burbine v. Moran,* 589 F.Supp. 1245 (D.R.I. 1984), rev'd, 753 F.2d 178 (1st Cir.), cert. granted, — U.S. —, 105 S.Ct. 2319, 85 L.Ed.2d 838 (1985).

■ In the instant case, if all the facts and circumstances are "sifted and weighed in determining whether or not a free and sentient waiver of the rights to remain silent and to the presence of an attorney has been effectuated," *Fuentes v. Moran*, 572 F.Supp. at 1470, and specifically, whether appellant made a *knowing* waiver, the following conclusions emerge:

1) The appellant was in the custody of police officers at the time he gave his confession;

2) Attorney Schultz was retained to represent appellant by appellant's wife at a time prior to the giving of the confession;

3) Attorney Schneider was engaged by attorney Schultz. Schneider contacted the homicide division of the Houston Police Department prior to the signing of the confession and advised officers that he had been retained to represent appellant, and instructed an officer that appellant should not be further questioned;

4) Attorneys Schultz and Schneider proceeded to the police station, arriving shortly before 11:00 P.M.

5) The attorneys were told that appellant was in jail; they procured a jail pass card, proceeded to the jail, discovering then that appellant was not in jail;

6) Attorney Schneider returned to the homicide division and was informed that appellant was being questioned in an adjacent room;

7) The attorneys informed Lt. Zoch that they were hired by appellant's wife to represent appellant; they asked Zoch to inform appellant of their presence; Zoch declined; they requested that Zoch give appellant their business cards; Zoch again declined;

8) An assistant district attorney instructed homicide officers that attorneys for appellant would not be allowed access to appellant unless he (appellant) requested their assistance;

9) Attorney Schneider attempted, by telephone, to send telegrams to the police chief, all detectives connected with appellant's case, and to appellant, but the telegrams were never delivered;

10) Appellant signed his confession at 12:17 A.M. the following morning. Attorneys Schneider and Schultz were permitted to see appellant at 12:30 A.M.

11) Lt. Zoch affirmatively testified that he would not allow the attorneys to see appellant because appellant was cooperating and "I saw no point in stopping the investigation at that point." When Zoch was asked whether or not he thought a visit from the attorneys would cause appellant to "break off the statement" he replied "yes, sir, that's correct."

The facts and circumstances of the instant case are a far cry from the facts in all of the federal cases chronicled ante at pg. 567–568, and even the cases from the various state jurisdictions herein enumerated. The attorneys hired by appellant's wife in the instant case did everything short of kicking in the interrogation room door to gain access to appellant—at a time when appellant, if given a knowing and intelligent choice, might certainly have opted to remain silent. This unusual chain of events leads us to conclude that:

"This combination of circumstances clearly vitiates any claim that a waiver of counsel was knowing and voluntary. Were this not so, the proper role of a defense counsel would be meanly diminished. If police officers with a more than warm suspect in their custody were permitted to engage in frustrating dissimulation with impunity, they would have to be more than human to resist the temptation to mislead the suspect and his counsel." *Burbine v. Moran*, 753 F.2d at 187 (1st Cir.1985).

Although we have previously found that appellant gave his confession voluntarily, we find from the totality of the above facts and circumstances that appellant did not make an *intelligent and knowing* waiver of his right to consult an attorney and that his confession was obtained in violation of the Fifth Amendment to the United States

Constitution and Art. I, Sec. 10 of the Texas Constitution.

The judgment of the court of appeals is reversed and the cause is remanded for a new trial.

ONION, P.J., and W.C. DAVIS and WHITE, JJ., dissent.

CLINTON, Judge, concurring.

In determining which way to go to resolve the question apparently of first impression in this Court, whether given the facts of the case appellant knowingly waived his Fifth Amendment rights, the Court should not reject any proposition because not required by the Supreme Court. The fact of the matter is that no rule is in any way "mandated by the Supreme Court in *Miranda*"—save and except the "safeguards" established therein.

The Supreme Court made clear it intended *Miranda* "safeguards" to be minimal, *viz:*

"Our decision in no way creates a constitutional straightjacket which will handicap sound efforts at reform, nor is it intended to have that effect. We encourage Congress and the States to continue their laudable search for increasingly effective ways of protecting the rights of the individual while promoting efficient enforcement of our criminal laws. However, unless we are shown other procedures which are at least as effective in apprising accused persons of their right to silence and in assuring a continuous opportunity to exercise it, the following safeguards must be observed".

*Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624.

Therefore, while the Supreme Court disclaimed the notion that its safeguards meant "that each police station must have a 'station house lawyer' present at all times to advise prisoners," the simple truth is that a State is free to provide one should it be thus advised. Accordingly, working

*sans* "constitutional straight jacket," this Court quite properly surveys rules and requirements laid down in other jurisdictions.

The majority purports to resort to a consideration of "the balance of interest between society's needs for *reasonable* law enforcement as against the accused's right to remain silent and to assert his privilege against self-incrimination,"[1] having gleaned that kind of balancing test from the Rhode Island court in *State v. Burbine*, 451 A.2d 22, at 29 (R.I.Supr.1982). However, what it actually does is to pick and choose from among other jurisdictions. Thus it declines "the invitation of appellant to adopt either the *Weber* rule or the New York rule." I agree we are not ready for the latter. However, the *Weber* rule ought not be rejected out of hand. Unlike an unstructured examination the majority says the Court must make–a totality of circumstances test—when a lawyer is actually present at the police station, as here, a *Weber* rule has a desirable feature of predictability and for that reason may well prove to be more workable for participants in the criminal justice system.

Nevertheless, believing that the instant opinion will not be the last word on this matter of first impression in this Court and agreeing with the eventual finding of the Court that the confession at issue was secured in violation of rights of appellant under Article I, § 10 of the Constitution of the State of Texas, I join the judgment (but not the opinion) of the Court.[2]

TEAGUE, Judge, concurring.

I concur in the result the majority opinion reaches, "that appellant did not make an intelligent and knowing waiver of his right to consult an attorney and that his confession was obtained in violation of the Fifth Amendment to the United States Constitution and Art. I, Sec. 10 of the Texas Constitution," but do so reluctantly because there is much mischief in what the

1. All emphasis is mine unless otherwise indicated.

2. Since the Supreme Court has yet to decide the question presented here, I would not presume to provide an answer under the Fifth Amendment to the Constitution of the United States.

majority opinion states, which is why I must write.

It has been said:

No system worth preserving should have to *fear* that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, [his right of self-incrimination]. If the exercise of constitutional rights will thwart the effectiveness of a system of law enforcement, then there is something very wrong with that system. Justice Goldberg, *Escobedo v. Illinois,* 378 U.S. 478, 490, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977 (1964).

And that is what this case is all about, whether our criminal justice system is so weak that we must fear that if an accused is permitted to consult with a lawyer he might become aware of, and exercise, his right of self-incrimination. If our system is that weak, then, as Justice Goldberg said over twenty years ago, see supra, there is something very wrong with our criminal justice system.

The record of this cause reflects that while in his office at the station house, which housed one of the offices of the homicide division in which Tommy Wayne Dunn, appellant, was then being interrogated by C.W. Kent and W.T. Dunn, Lieutenant Norman J. Zoch, who was the supervising officer of Kent and Dunn, told Carl Theobold "Ted" Schultz, III, and Stanley Schneider, two attorneys who had been dispatched to the station house by appellant's wife, "that we were in the process of conducting an investigation and that I would not allow them to see [appellant] at that time because [appellant] had not asked for a lawyer ... I would not allow them to interfere with the investigation at that point." Zoch also testified that he "thought that perhaps, if [appellant] had an opportunity to consult with [counsel], that he might break off [giving them, the police,] a statement."

And, Zoch didn't permit counsel to see or communicate with appellant until after a written confession had been obtained from him. The record reflects that immediately after the interrogation, but after Kent and Dunn had obtained appellant's signature to his written confession, Kent then informed appellant that there were two attorneys who wanted to speak with him. Counsel and appellant then, for the first time, communicated with each other.

Zoch's fear, that "if [appellant] had an opportunity to consult with [counsel], then he, [appellant], might break off [giving them, the police,] a statement," was well founded because over thirty-five years ago in the concurring opinion that he filed in *Watts v. Indiana,* 338 U.S. 49, 59, 69 S.Ct. 1347, 1357, 93 L.Ed. 1801 (1949), Justice Jackson of the United States Supreme Court made the following observation:

To bring in a lawyer means a real peril to solution of the crime because, under our adversary system, he deems that his sole duty is to protect his client—guilty or innocent—and that in such a capacity he owes no duty whatever to help society solve its crime problem. Under this conception of criminal procedure, any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to police under any circumstances.

The questions that are before this Court for resolution are highly important to the citizens of this State, namely, whether this Court will give counsel, who is then lawfully and physically present, the right to communicate with an accused person who is then being detained by the police, and is in police custody; does the accused's right to counsel necessarily include the right of counsel to have access to the accused when he is being detained by and in the custody of the police; and will the actions of state agents, in preventing counsel to communicate with the accused, prevent a waiver by the accused of his right to the assistance of counsel from becoming effective.

These are not simple questions, but, if all are answered by this Court in the affirmative, such will give meaning to the right of the accused to have the assistance of counsel when he is in custody and being detained by the police.

Long ago, the Supreme Court of the United States, see *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), held that the right to use counsel at the formal trial would be a very hollow thing if, for all practical purposes, the conviction is already assured by pretrial interrogation, thus rejecting a rule of law that is found in such countries as the Soviet Union, see Feiger, *Justice in Moscow* (1964), 86, that the formal trial will be merely an appeal from the pretrial interrogation. Also see *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In holding that "we should 'consider the balance of interest between society's need for reasonable law enforcement as against the accused's right to remain silent and to assert his privilege against self-incrimination,'" the majority obviously overlooks the fact that our Federal and State constitutions, unlike others, such as the Soviet Union, strikes a balance in favor of the accused. See *Escobedo v. Illinois,* supra, in which the Supreme Court of the United States held: "[W]hen the process shifts from the investigatory to accusatory— when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and ... the accused must be permitted to consult with his lawyer."

If the accused has the right to the assistance of counsel when he has been accused of committing a criminal wrong, and is then in the custody of the police, which right no one disputes, does this right to the assistance of counsel include the right of counsel to have access to the accused? That is the burning question in this cause. It should be answered in the affirmative, without any reservations, qualifications, or conditions. The majority, however, answers the question in the negative. In doing so, I believe it errs.

A majority of our sister state courts, however, have answered the question in the affirmative. See *Weber v. State,* 457 A.2d 674 (Del.Supr.1983); *People v. Smith,* 93 Ill.2d 179, 66 Ill.Dec. 412, 442 N.E.2d 1325 (Ill.Supr.1982); *State v. Matthews,* 408 So.2d 1274 (La.Supr.1982); *State v. Haynes,* 288 Or. 59, 602 P.2d 272 (Ore. Supr.1979), cert. denied, 446 U.S. 945, 100 S.Ct. 1275, 64 L.Ed.2d 802 (1980); *State v. Jones,* 19 Wash.App. 850, 578 P.2d 71 (Wash.Ct.App.1978); *Commonwealth v. McKenna,* 355 Mass. 313, 244 N.E.2d 560 (Mass.Supr.1969); *Commonwealth v. Hilliard,* 471 Pa. 318, 370 A.2d 322 (Pa.Supr. 1977).

The majority viewpoint was best expressed by Justice Moore, who authored the opinion for the Delaware Supreme Court in *Weber v. State,* supra: "[I]f prior to or during custodial interrogation, and unknown to the suspect, a specifically retained or properly designated lawyer is actually present at the police station seeking an opportunity to render legal advice or assistance to the suspect, and the police intentionally or negligently fail to inform the suspect of that fact, then any statement obtained after the police themselves know of the attorney's efforts to assist the suspect, or any evidence derived from any such statement, is not admissible on any theory that the suspect intelligently and knowingly waived his right to remain silent and his right to counsel as established by *Miranda* ..." 457 A.2d, at 686. This rule, however, is not without qualification: "To effectively invoke this rule, the attorney must present himself at the police station or other site of interrogation and have a bona fide right within the ambit and limitations of the Code of Professional Responsibility to hold himself out as the suspect's counsel (see DR 2–103 and 2–104)." (686). In this cause, and understandably so, the State does not take issue with the fact that both Schultz and Schneider had the lawful right to be at the station house and hold themselves out as counsel for appellant.

The minority viewpoint, which the majority adopts, but which is presently under scrutiny by the Supreme Court of the United States, see *State v. Burbine,* 451 A.2d 22 (R.I.Supr.1982), aff'd sub.nom. *Burbine v. Moran,* 589 F.Supp. 1245 (1984), rev'd *Burbine v. Moran,* 753 F.2d 178 (1st Cir.

1985), cert. granted, see *Moran v. Burbine,* —— U.S. ——, 105 S.Ct. 2319, 85 L.Ed.2d 838 (1985), to consider the question "Does the Fifth Amendment's Self-Incrimination Clause require suppression of three confessions, each made after proper *Miranda* warnings and three valid waivers of rights, solely because an attorney requested by the defendant was given misleading information by a police officer over the telephone that there would be no further interrogation of defendant that night and defendant was not informed of the attorney's telephone call?", holds that the police do not have any duty to inform an accused, who is in their custody and who has received his *Miranda* warning, that counsel is physically present and wants to assist the accused.

The only other state courts which appear to subscribe to the minority viewpoint are those from Nebraska, North Carolina, and Ohio, see *State v. Johns,* 185 Neb. 590, 177 N.W.2d 580 (Neb.Supr.1970), *State v. Smith,* 294 N.C. 365, 241 S.E.2d 674 (N.C. Supr.1978), and *Ohio v. Chase,* 55 Ohio St.2d 237, 378 N.E.2d 1064 (Ohio Supr. 1978). Federal courts of this Nation, see the cases cited in *State v. McConnell,* 529 S.W.2d 185, 187 (Mo.Ct.App.K.C.1975), and *Fuentes v. Moran,* 572 F.Supp. 1461, 1469 (D.R.I.1983), aff'd, *Fuentes v. Moran,* 733 F.2d 176 (1st Cir.1984), appear to subscribe to the minority viewpoint.

The minority viewpoint has best been expressed by Judge Selya, a federal district court judge, see *Fuentes v. Moran,* supra, as follows: "The sockdolager is simply this: Petitioner's right against self-incrimination is personal; it cannot be invoked or waived by anyone other than the person to whom the right attaches." 572 F.Supp., at 1469.

The majority opinion in this cause relies heavily upon what Judge Selya stated. In doing so, however, the majority overlooks the fact that notwithstanding that *Fuentes v. Moran,* supra, was affirmed by the First Circuit, that court in *Burbine v. Moran,* supra, held: "[W]e join ranks with a number of other respected courts, indeed apparently all the other state supreme courts that have considered the issue. In all of those cases, like the one at bar, Miranda warnings were duly given, damaging admissions were made, and there was no hint of threats or phyiscal coercion. And in all of those cases the courts held that the failure to inform a suspect in custody that his attorney or an attorney retained for him was seeking to see him vitiated his waiver of his Fifth Amendment right to assistance of counsel at his questioning." 753 F.2d, at 186. The First Circuit further pointed out in *Burbine v. Moran,* supra, that "Fuentes was a close case, narrowly favoring the state," and also pointed out that the attorney in *Fuentes,* supra, only made a "half-hearted, feckless" effort to be of service to the accused, and lastly held that the police conduct in that cause did not sink to the level of trickery.

Thus, in light of the above, it is difficult, if not impossible, to understand how the majority can state that the federal district court decision of *Fuentes v. Moran,* supra, is "persuasive." Furthermore, it is also difficult, if not impossible, to understand the majority's following holding, "We conclude from the rationale in *State v. Burbine,* supra, (the State court decision which has been reversed by a federal circuit court of appeals and is presently pending on certiorari before the Supreme Court of the United States, see supra), *Kelly v. State,* 621 S.W.2d 176 (Tex.Cr.App.1981) (a panel opinion of this Court, which is not even factually in point to this cause), and *Fuentes v. Moran,* supra, (the federal district court opinion), is closely akin to that employed in *State v. Burbine,* supra." As to the majority of this Court relying upon a federal district court opinion for authority, see and cf. what this Court stated in *Pruett v. State,* 463 S.W.2d 191, 194 (Tex.Cr.App. 1971).

In this instance, appellant, who had been given his *Miranda* warning, was unaware that Schultz and Schneider were standing nearby. However, the fact that he might have been indifferent to the abstract offer of counsel by the police, by not then de-

manding to have the assistance of counsel, does not also mean that he would have disdained the chance to consult with Schultz and Schneider before signing the confession, had they been given the opportunity to consult with him. By preventing Schultz and Schneider from communicating with appellant, the actions of the State's agents in this cause were equivalent to holding appellant incommunicado, which itself is sufficient to void a confession. See *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Ward v. Texas*, 316 U.S. 547, 62 S.Ct. 1139, 86 L.Ed. 1663 (1942); *Collins v. Beto*, 348 F.2d 823 (5th Cir.1965).

From the above, it should be obvious that but for the actions by the State's agents in this cause, in preventing Schultz and Schneider from communicating with appellant, appellant would have had "[t]he guiding hand of counsel" when he was being interrogated by the police. See and cf. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

I also observe that what the majority opinion states is in conflict with what this Court stated and held in *Hamilton v. State*, 68 Tex.Cr.R. 419, 153 S.W. 331, 336 (Tex.Cr.App.1913), in which this Court was confronted with a similar situation as at bar. In condemning similar conduct, this Court held that such conduct on the part of the State's agent was "a clear and palpable violation of the Constitution and Bill of Rights."

Furthermore, but long ago, when it was a criminal offense in this State, see former Penal Code Art. 1176, for a custodian of a prisoner to wilfully deny the defendant's attorney the right to see and consult with the defendant, the then Dallas Civil Court of Appeals, in *Wilmans et al. v. Harston*, 234 S.W. 233 (Tex.Civ.App.—Dallas 1921, no writ history), stated the matter this way: "The due and orderly administration of justice requires that the rights and privileges of attorneys who are officers of the courts be protected with zealous care against undue infractions of a nature which are calculated to deny prisoners whom they represent the advice and aid of counsel ..."

"[A]lthough the state has a significant interest in investigating and prosecuting criminal conduct, that interest cannot override the fundamental right to an attorney guaranteed by the Constitution." *People v. Rogers*, 48 N.Y.2d 167, 422 N.Y.S.2d 18, 22, 397 N.E.2d 709, 713 (Ct.App. New York 1979). Thus, in a reciprocal sense, the right of an attorney to see and consult with his client is the same as the right of the accused to have the assistance of counsel when he is in the custody of the police. "To allow the police to interrogate, and elicit a confession from, a suspect without informing the suspect of his counsel's availability while effectively denying his counsel reasonable access (would not only) promote those 'evils' inherent in the interrogation process which Miranda condemned," see *State v. Burbine*, supra, at 37 (Murray, J., dissenting opinion), but would also amount to "our system of justice permitting the district attorney, the lawyer representing the State, to extract a confession from the accused while his own lawyer, seeking to speak with him, was kept from him by the police." *People v. Donovan*, 13 N.Y.2d 148, 193 N.E.2d 628, 629, 243 N.Y.S.2d 841, 842 (Ct.App.N.Y. 1963).

Not only would I hold in this cause what the majority does, that the State has failed to sustain its heavy burden of proof that appellant knowingly and intelligently waived his right to the assistance of counsel during his custodial interrogation by Kent and Dunn, I would additionally adopt what the Delaware Supreme Court stated and held in *Weber v. State*, supra. To do less, I believe, is to denigrate the accused's constitutional right to counsel.

For all of the above and foregoing reasons, I concur in the result the majority reaches.

MILLER, Judge, concurring.

Addressing the concurring opinions of Judge Clinton and Judge Teague, I find the "*Weber* rule" unsatisfactory precisely be-

cause it is rigorously structured. Predictability aside, I see no advantage to requiring a lawyer to be "actually present at a police station" in every instance. Given the unstructured balancing test of the majority opinion, a suspect's right to remain silent and his right to counsel might compel the police to inform him that "his" attorney is trying to contact him from another state by telephone or is trying to contact him at a different police substation [applicable where the police move the suspect from place to place in order to thwart attempts by outsiders to locate him. See *Foster v. State,* 677 S.W.2d 507 (Tex.Cr.App.1984)], etc.

Rigid rules have the advantage of predictability but also carry the disadvantage of being subject to manipulation. I prefer a test broad enough to grant relief not only in the instant case, but in all other cases equally compelling, regardless of the physical circumstances. Thus, I join the opinion of the majority.