THE COURT OF CRIMINAL APPEALS


OF TEXAS







AP-74,399






MICHAEL ANTHONY RODRIGUEZ, Appellant



v.



THE STATE OF TEXAS






Appeal from Case F01-00326T of the


283rd Judicial District Court of


Dallas County






 Per curiam.



 On December 13, 2000, the appellant and six other inmates escaped from the Connally
Prison Unit. On Christmas Eve, the group robbed the employees of Oshman's Supersports in
Irving, taking merchandise and firearms. After stealing one of the employees' Ford Explorer, one
of the escapees drove it to the loading dock and radioed the other escapees to hurry because a cop
was coming.

 Irving Police Officer Aubrey Hawkins responded to a 911 call about the robbery. He
drove to the loading dock and pulled in behind the Explorer, just as the escapees were leaving the
store. The escapees fired at Hawkins, who was shot eleven times by guns that were fired from
several directions and distances. 

 In January 2001, the appellant and some of the other escapees were arrested in Colorado.
The appellant confessed to participating in the robbery.

 In May 2002, a jury found the appellant guilty of capital murder. Pursuant to the jury's
answers to the special issues in the court's charge on punishment, the trial court sentenced the
appellant to death.

 Appeal to this court is required. The appellant presents twenty-eight points of error: four
on pre-trial matters, twenty on jury selection, and four on the guilt stage of the trial. He does not
contest the sufficiency of the evidence.

I. Pre-trial Issues

A. The Appellant's Confession

 Point of error twenty-one is that "the trial court erred in failing to suppress [his] confession" because it followed an illegal arrest in Colorado. The appellant argues that the Texas
capital-murder warrant obtained by Detective Johnson of the Irving Police did not support his
arrest because (1) the affidavit supporting it lacked probable cause, (2) its authority did not
extend beyond Texas' borders, and (3) it was based on an unconstitutional lineup. He also argues
that nothing in a federal warrant charging him with unlawful flight to avoid prosecution reflects
his participation in the Oshman's crime and therefore, it cannot support his arrest. 

 At the hearing on the motion to suppress, the parties stipulated that certain evidence and
testimony presented on a motion to suppress in co-defendant Rivas's trial would be admitted in
this case; therefore the court could consider the evidence and the previous testimony without
requiring the witnesses to testify again.

 Included in this evidence was the prior testimony of Sergeant Robert McDonald, who was
in charge of the Regional Fugitive Unit of the El Paso County Sheriff's Office in Colorado
Springs, Colorado. He explained that nearly two weeks prior to the arrests, authorities had
received reports from citizens who had seen some of the escapees in Colorado.

 The stipulated evidence included a portion of a report written by Deputy United States
Marshal Gerard McCann, which described the organization of federal and local authorities to
establish a perimeter around the Colorado RV park in which the escapees had been living. He
also explained that a "mobile take-down team" was formed in case any of the fugitives left the
park. As the authorities were making their preparations, a Jeep Cherokee left the park and
stopped at a convenience store down the road. Once it stopped, the mobile take-down team
converged on the vehicle. Three escapees including the appellant were taken into custody without
incident. Several weapons were recovered from the vehicle, and the three escapees were
transported to the Teller County Sheriff's Office.

 Also introduced by stipulation were the testimony and notes of Sergeant Jeff Spivey of
the Irving Police Department. The notes say that after being informed that law enforcement
officials in Colorado had three of the escapees in custody, he flew to Colorado.

 The only new evidence at the appellant's hearing was Irving Police Department Detective
Randal Johnson's testimony about his investigation of Hawkins's murder. Johnson said he
determined that the escaped inmates were responsible for the crime, and he obtained an arrest
warrants for each of them. Johnson was aware that federal authorities were already involved in
trying to re-capture the fugitives. On January 22, 2001, after receiving information that the
appellant and the other escapees had been taken into custody in Colorado, Johnson, Spivey, and a
federal officer flew to Colorado. They first visited the RV park where the fugitives had been
living and assisted in obtaining a search warrant for the fugitives' trailer. Johnson and Spivey
then went to the Teller County Jail where Johnson and FBI Agent Robert Moen interviewed the
appellant.

 The State introduced copies of the Texas arrest warrant, the appellant's voluntary
statement, the federal arrest warrant, and the search warrant for the RV. 

 The trial court made findings of fact and conclusions of law. It first noted that the
appellant was arrested by Colorado authorities in a joint operation with an FBI "task force." The
court found that Detective Johnson arrived in Colorado approximately six and a half hours after
the appellant's arrest and began interviewing him. When Johnson began the interview process,
the Irving warrant had been signed, and Johnson did not get a Colorado warrant based on his
Texas warrant. Thus, the court concluded that "Article 51.13 is not going to apply, because there
were no charges filed and, too, the officer did not get a requisition for Colorado warrant." The
court also concluded that Article 14.04 of the Code of Criminal Procedure did not apply because
Texas authorities did not physically take the appellant into custody before he confessed.

 However, the court did find that Colorado Revised Statute 16-3-102, which resembles
Texas Code of Criminal Procedure 14.04, permits a Colorado officer to make a warrantless arrest
when he believes that a criminal offense has, in fact, been committed and the officer has
reasonable grounds for believing that the person being arrested has committed the offense. The
court held that officers may rely on other law-enforcement communications for probable cause.
From communications with Texas officers, the arresting Colorado officers knew that the
appellant had escaped from a Texas prison and was suspected of committing capital murder. This
information gave them sufficient probable cause to arrest the appellant. The Court also concluded
that the arrest made in Colorado was valid as a result of the federal warrant. Therefore, the court
ruled that because the appellant was legally in custody before Johnson spoke with the appellant,
the appellant's confession was admissible.

 In considering a trial court's ruling on a motion to suppress, an appellate court must
uphold the trial court's ruling if it is reasonably supported by the record and is correct under any
theory of law applicable to the case. State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim. App.
2002); Romero v. State, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990). In determining
whether a trial court's decision is supported by the record, we generally consider only evidence
adduced at the suppression hearing because the ruling was based on it rather than evidence
introduced later. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). Evidence
presented at the trial on the merits may be considered when, as in this case, the suppression issue
has been re-litigated by consent by the parties during the trial. Ibid.

 The appellant correctly argues that the authority of an arrest warrant does not extend
beyond the state's borders. Thus, the Texas warrant could not be used as authority for an arrest
made in Colorado. The appellant also correctly asserts that the Article 51.13 of the Texas Code
of Criminal Procedure (the Uniform Criminal Extradition Act) does not support his arrest.

 On the other hand, the evidence does support the court's conclusions that the appellant's
arrest was proper both under the federal warrant and as a warrantless arrest by the Colorado
authorities. During the motion to suppress, the State offered a copy of the federal warrant into
evidence.

 The appellant argued that the federal warrant was based on probable cause only as to co-defendant Halprin and not as to him. The appellant re-urges this argument on appeal. Additionally, he argues that nothing in the affidavit supporting the federal warrant gave any indication that
the confidential informant mentioned was trustworthy.

 In the affidavit for the warrant of arrest for unlawful flight to avoid prosecution, an FBI
agent stated that on December 25, 2000, an Irving, Texas, magistrate issued arrest warrants for
the appellant and his six co-defendants for the capital murder of an Irving police officer. Those
warrants were based on the eyewitness identification of the appellant and his co-defendants, the
other escapees. On December 27, 2000, the agent received information from Texas Department
of Criminal Justice Investigator Bruce Tony that the seven defendants had fled from Texas to
Mexico. Tony received his information from a confidential source who had spent the night of
December 26, 2000 with two of the co-defendants and had a conversation with one of them about
the Oshman's robbery and "the group's" plan to flee into Mexico.

 In Illinois v. Gates, 462 U.S. 213 (1983), the Court held that an appellate court must look
at the "totality of the circumstances" in determining the sufficiency of a search warrant affidavit.
It is no longer imperative that the record reveal both that the informant is credible and that the
informant has a substantive basis for the information he has given. Compelling evidence of one
prong will make up for a deficiency in the other. Furthermore, a reviewing court is not to conduct
a de novo review of the magistrate's probable cause determination. Id., at 236.

 If there is a "substantial basis" in the record to support the magistrate's ruling, an
appellate court should not overrule the magistrate's decision. Massachusetts v. Upton, 466 U.S.
727, 732-33 (1984).

 Here, the confidential source's statements to Tony reflect specific information based on
the source's personal knowledge. Two days after Hawkins's murder, the source obtained
information from one of the escapees about the robbery, the shooting, and the group's future
plans to flee. Furthermore, given the context of the conversation, the court could have reasonably
determined that "the group" referred to included the appellant. The court did not abuse its
discretion in determining that the federal warrant was sufficient to support the appellant's arrest.
Therefore, the appellant was legally under arrest at the time he gave his statement. 

 The appellant's arrest was proper also as a warrantless arrest by Colorado authorities.
Colorado Revised Statute 16-3-102 permits a Colorado officer to make a warrantless arrest when
he has probable cause to believe that a criminal offense has been committed and probable cause
to believe that the person being arrested has committed the offense. The stipulated evidence
presented at the motion to suppress indicated that both Colorado and federal authorities knew
that the appellant was among seven escaped Texas inmates before the day of their arrest.
Although the exact source of their knowledge was not apparent from the evidence presented at
the motion to suppress, the court could have concluded reasonably that the information was
sufficient to provide them with probable cause to arrest. This conclusion was further supported
by evidence presented at trial by Teller County Sheriff Frank Fehn and several officers from the
Sheriff's Office of El Paso County, Colorado. These witnesses testified without objection that
their offices had received "be on the lookout" notices since December 25, 2000, concerning the
seven Texas escapees and the violence they had committed in Irving.

 Because the record supports the court's findings and conclusions that the appellant was
lawfully in custody when he gave his statement to Johnson, we uphold the refusal to suppress the
appellant's statement. Point of error twenty-one is overruled.B. Evidence Seized

 The appellant asserts in his twenty-second point of error that "the trial court erred in
failing to suppress the evidence of the weapons seized from the vehicle in which [he] was a
passenger because of his illegal arrest." In a one-paragraph argument, the appellant adopts the
argument and authorities he cited in his previous point of error. Just as the previous point of error
failed, so this one fails. Point of error twenty-two is overruled.

C. Right to Counsel 

 The twenty-third point of error is that "the trial court erred in failing to suppress [his]
confession because of the Teller County Sheriff's Office['s] refusal to allow legal counsel to
consult with [him]."

 After learning of the arrests of the escapees, Deborah Grohs, a Colorado Public Defender,
attempted to speak with the appellant and the other escapees. She had not been retained or
appointed to their cases. During his interrogations, the appellant never requested an attorney. In
fact, the appellant waived his right to an attorney on at least two separate occasions on the day he
provided his statement.

 If an accused requests counsel, thereby invoking his Fifth Amendment right to counsel,
all interrogation must cease until an attorney is present or the accused reinitiates the conversation. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); Miranda v. Arizona, 384 U.S. 436, 474
(1966). However, nothing in the Fifth Amendment imposes a duty on the police to inform a
suspect of an attorney's requests or efforts to see him. Moran v. Burbine, 475 U.S. 412, 425
(1986).

 The appellant argues that this case is controlled by Dunn v. State, 696 S.W.2d 561 (Tex.
Crim. App. 1985). In Dunn, the Houston Police Department refused to inform the defendant that
attorneys hired by his wife to represent him were trying to meet with him during his interrogation. We concluded that although the defendant gave his confession voluntarily, he did not make
a knowing and intelligent waiver of his right to consult with an attorney in violation of both the
Fifth Amendment to the United States Constitution and Article 1, Section 10 of the Texas
Constitution. Dunn's interpretation of the Fifth Amendment right to counsel has been overturned.
Goodwin v. State, 799 S.W.2d 719, 729-30 (Tex. Crim. App. 1990).

 The appellant has not argued that the Texas Constitution should be interpreted any
differently than the United States Constitution; therefore, we may treat them as giving the same
protection. Heitman v. State, 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1991).

 This Court has held that the state constitutional right to counsel affords no more
protection than its federal counterpart. Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim.
App. 1999). The appellant has not argued a violation of Code of Criminal Procedure Article
38.22. Point of error twenty-three is overruled.

D. Transcription

 In his twenty-fourth point of error, the appellant argues that "the trial court erred in
rejecting [his] counsel's request that the court reporter transcribe all sidebar and bench conferences." He claims that, before trial, he filed a motion to compel the court reporter to take down
all conferences, and his request was granted. However, according to the appellant, at trial,
defense counsel requested a side-bar conference, and when the court reporter did not appear, he
objected to her absence. The trial court informed counsel that he would not require the reporter to
transcribe the bench conferences. The State conceded at the appellant's motion for new trial that
there were numerous unrecorded conferences. The appellant contends that the court's refusal
violated Rule of Appellate Procedure 13.1 and deprived him of a complete record. 

 Rule of Appellate Procedure 13.1 requires the official court reporter or court recorder to
"attend court sessions and make a full record of the proceedings unless excused by agreement of
the parties." Although Rule 13.1 now requires a reporter to take down all proceedings, it does not
relieve a party of its obligation to object to preserve error. Valle v. State, 109 S.W.3d 500, 508
(Tex. Crim. App. 2003).

 Rule 33.1(a) requires that the record show that a complaint was made to the trial court by
a timely request, objection, or motion that was specific, and that the trial court ruled or refused to
rule. Rule 38.1(h) requires that an appellant's brief contain appropriate citations to the record,
which certainly includes citations to the complaints and rulings. The appellant fails to cite in his
brief or in his motion for new trial any objection or adverse ruling. His complaint is inadequately
briefed. Point of error twenty-four is overruled.

II. Voir Dire & Jury Selection

A. Code of Criminal Procedure Article 35.16(a)(10) Procedures 

 The appellant's first three points of error complain about voir dire procedures relating to
Code of Criminal Procedure Article 35.16(a)(10), which reads:

 (a) A challenge for cause is an objection made to a particular juror, alleging some
fact which renders him incapable or unfit to serve on the jury. A challenge for
cause may be made by either the state or the defense for any one of the following
reasons:

* * *


 10. That from hearsay, or otherwise, there is established in the mind of the
juror such a conclusion as to the guilt or innocence of the defendant as
would influence him in his action in finding a verdict. To ascertain
whether this cause of challenge exists, the juror shall first be asked
whether, in his opinion, the conclusion so established will influence his
verdict. If he answers in the affirmative, he shall be discharged without
further interrogation by either party or the court. If he answers in the
negative, he shall be further examined as to how his conclusion was
formed, and the extent to which it will affect his action; and, if it appears
to have been formed from reading newspaper accounts, communications,
statements or reports or mere rumor or hearsay, and if the juror states that
he feels able, notwithstanding such opinion, to render an impartial verdict
upon the law and the evidence, the court, if satisfied that he is impartial
and will render such verdict, may, in its discretion, admit him as competent to serve in such case. If the court, in its discretion, is not satisfied that
he is impartial, the juror shall be discharged.


 His first point of error complains that "the trial court erred by refusing to include in the
jury questionnaire questions pursuant to Article 35.16(a)(10) of the Code of Criminal Procedure." During voir dire, the trial court refused the appellant's request to include certain questions
in the jury questionnaire because, as the appellant conceded, similar questions were already
included in the questionnaire.

 In his second point of error, the appellant contends that "the trial court erred by permitting
the rehabilitation of prospective jurors who were disqualified under Article 35.16(a)(10)."

 His third point is that the court erred by denying his motion that persons who indicated on
their questionnaires that they had formed an opinion about the case be asked only three questions.
The trial court refused the appellant's request.

 The conduct of the voir dire examination rests largely within the sound discretion of the
court. Curry v. State, 910 S.W.2d 490, 492 (Tex. Crim. App. 1995). Indeed, the trial court has
the right and the duty to impose reasonable restrictions on voir dire. Etheridge v. State, 903
S.W.2d 1, 7 (Tex. Crim. App. 1994), cert. denied, 516 U.S. 920 (1995); Cantu v. State, 842
S.W.2d 667, 687 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 926 (1993). The trial court did
not err in refusing to include the appellant's questions in the questionnaires.

 Article 35.16(a)(10) does impose a restriction on the trial court's discretion by prescribing 
questions that must be asked when a juror says that "there is established in the mind of the juror
 a conclusion as to the guilt or innocence of the defendant." Such a "juror shall first be asked,
whether in his opinion, the conclusion so established will influence his verdict."

 The appellant's motion for three questions was not in accordance with the statute. His
first question was whether the juror had learned anything about the case other than in court. It has
no basis in the statute.

 His second question was whether they had an opinion or belief that the appellant was
guilty, which is significantly different from the statutory question of whether there was established in the mind of the juror a conclusion as to the guilt or innocence of the defendant.

 Therefore his third question, which was whether the opinion or belief would influence
them in their verdict, was just as significantly different from the question that the statute requires.

 The trial court had discretion to refuse those questions. The third point of error is
overruled.

 The appellant's claim that the trial court erred in permitting the rehabilitation of prospective jurors who were disqualified under Article 35.16(a)(10) also fails. In his brief, the appellant
sets out the responses from twenty-five different veniremembers who answered the opinion
question in the questionnaire with statements such as, "I believe he is guilty," "He did it," or "I
already think he's guilty based on the news coverage I've seen." He claims that any veniremember who responded in this fashion had an opinion as to his guilt and was therefore absolutely
disqualified and should have been dismissed by the trial court without further questioning
pursuant to Article 35.16(a)(10). 

 Article 35.16(a)(10) does not absolutely disqualify a veniremember who has an opinion
regarding the appellant's guilt or innocence. Rather, to invoke Article 35.16(a)(10), the proponent must make a challenge for cause and demonstrate that the veniremember's conclusion as to
a defendant's guilt or innocence would influence his verdict. Curry, 910 S.W.2d at 493. The
appellant has not done this. The trial court did not abuse its discretion in refusing to excuse the
prospective jurors based solely on their answers to questions in the written questionnaire or in
allowing the venirepersons to be further questioned. The second point of error is overruled.

 Finally, the appellant complains under his first three points of error that, because of the
pervasive pretrial publicity and the court's failure to employ his requested questions in the jury
questionnaire, he was denied his due process right to be tried by a fair and impartial jury. U.S.
Const. amend. XIV. However, the court granted a motion to change venue in the case, and none
of the veniremembers that the appellant mentions in his brief on these points served on the jury.
Without more, the appellant has failed to show that he was tried by an unfair or partial jury. See,
e.g., Murphy v. Florida, 421 U.S. 794, 800-01 (1975) (holding that the mere existence of a
preconceived notion as to the accused's guilt or innocence is not sufficient to rebut the presumption of a prospective juror's impartiality). Points of error one through three are overruled.

B. Denying His Challenges for Cause

 In points of error four through thirteen, sixteen, and seventeen, the appellant claims that
the trial court erred in overruling his challenges for cause to eleven different veniremembers:
Eddy (point of error four), Thomas (point of error five), Patterson (point of error six), Carol
Wardrup (point of error seven), Chitsey (point of error eight), Hunnicutt (point of error nine),
Surratt (point of error ten), Fullerton (point of error eleven), Self (point of error twelve), Jerry
Wardrup (point of error thirteen), Self (point of error sixteen), and Cone (point of error seventeen). He claims that these venirepersons "were disqualified, most often and most clearly due to
the influence of pretrial publicity and due to their bias[es] in favor of [the] death penalty." 

 To preserve error on denied challenges for cause, the appellant must demonstrate on the
record that: 1) he asserted a clear and specific challenge for cause; 2) he used a peremptory
challenge on the complained-of venireperson; 3) all his peremptory challenges were exhausted;
4) his request for additional strikes was denied; and 5) an objectionable juror sat on the jury.
Feldman v. State, 71 S.W.3d 738, 743-45 (Tex. Crim. App. 2002); Green v. State, 934 S.W.2d
92, 105 (Tex. Crim. App. 1996).

 The appellant's ninth and tenth points of error have not been preserved. In his ninth point
of error, the appellant complains about venireperson Hunnicutt. However, the record shows that
the appellant did not use a peremptory strike on Hunnicutt even though he had strikes available.
Feldman, 71 S.W.3d at 743-45. Point of error nine is overruled.

 In his tenth point of error, the appellant complains about vernireperson Surrat, who was
chosen as a jury alternate. The selection of alternate jurors is separate and distinct from the
selection of the primary panel. Cooks v. State, 844 S.W.2d 697, 721 (Tex. Crim. App. 1992).
Following the selection of the primary panel, the court wipes out any unused peremptory strikes
either party might possess, and then gives each party one or two additional strikes depending on
the number of alternate jurors they are to select. See Article 35.15(d). Thereafter, the rules for
preserving error on challenges for cause during selection of an alternate juror are the same as
those applicable during the selection of the primary panel. Cooks, 844 S.W.2d at 721. The
appellant failed to use a peremptory strike in selecting the alternate jurors. Therefore, he has not
preserved error on his complaint regarding Surrat. Appellant's tenth point of error is overruled. With regard to the remainder of the appellant's complaints about denial of challenges for
cause, the record reflects that the appellant exhausted all fifteen of his peremptory challenges,
received three additional challenges, used those challenges, and then requested, but was denied,
further challenges.

 When the trial court errs in overruling a challenge for cause against a venireperson, the
defendant is harmed if he uses a peremptory strike to remove the venireperson and thereafter
suffers a detriment from the loss of the strike. Feldman, 71 S.W.3d at 743-45; Demouchette v.
State, 731 S.W.2d 75, 83 (Tex. Crim. App. 1986). Because the appellant received three extra
peremptory challenges in addition to the fifteen that he was granted by statute, the appellant can
demonstrate harm only by showing that at least four of his complained-of challenges were
erroneously denied. Feldman, 71 S.W.3d at 743-45.

 A defendant may properly challenge any prospective juror who has a bias or prejudice
against the defendant or any phase of the law upon which he is entitled to rely. Art. 35.16(a)(9),
(a)(10), (c)(2). When reviewing a trial court's decision to grant or deny a challenge for cause, we
look at the entire record to determine if there is sufficient evidence to support the trial court's
ruling. Feldman, 71 S.W.3d at 743-45; Patrick v. State, 906 S.W.2d 481, 488 (Tex. Crim. App.
1995). The test is whether the bias or prejudice would substantially impair the prospective juror's
ability to carry out his oath and instructions in accordance with the law. Feldman, 71 S.W.3d at
743-45. Before a prospective juror may be excused for cause on this basis, however, the law
must be explained to him and he must be asked whether he can follow that law regardless of his
personal views. Id. Finally, the proponent of a challenge for cause has the burden of establishing
that his challenge is proper. Id. at 747. The proponent does not meet his burden until he has
shown that the veniremember understood the requirements of the law and could not overcome his
or her prejudice well enough to follow it. Id. When the record reflects that a venireperson
vacillated or equivocated on his or her ability to follow the law, the reviewing court must defer to
the trial court. Moore v. State, 999 S.W.2d 385, 400 (Tex. Crim. App. 1999); Brown v. State, 913
S.W.2d 577, 580 (Tex. Crim. App. 1996).

 In point of error four, the appellant complains that the trial court erred in denying his
challenge for cause to prospective juror Eddy, because Eddy favored the death penalty, saw little
purpose for the mitigation issue, and placed the burden on the defense to convince him that a life
sentence was appropriate.

 At the beginning of the State's individual voir dire of Eddy, Eddy explained that he
understood the need to listen to all the evidence and that he could be fair. Throughout voir dire,
Eddy consistently stated that he would base his decisions on the evidence presented.

 After the prosecutor explained the purpose of the mitigation question, the following
exchange occurred:

 Q. [Prosecutor] Do you think [that the mitigation question is] a good question to
have in a death penalty case?


 A. [Venireperson] No.


 Q. Why not?


 A. Because if you find the other two guilty [sic], there shouldn't be no third
question.


 Q. If you think he's - already found him guilty and he's a future danger and that
he anticipates a life would be taken, that that [sic] pretty much makes your
decision for you?


 A. Yes, sir.


The prosecutor then further explained the reasoning behind the mitigation question and the
importance of keeping an open mind and listening to all of the evidence before answering the
mitigation question. Eddy then commented that, after hearing the purpose of the mitigation issue,
he understood its relevance.

 Eddy also acknowledged that he marked in his questionnaire a general belief that the
death penalty was appropriate for anyone who committed murder. However, when the prosecutor
explored this belief, Eddy stated that he was thinking of heinous fact situations when he marked
that answer. He noted that he now recognized that a life sentence might be more appropriate in
some cases.

 At the outset of the appellant's questioning Eddy commented that it might be "tough" for
him to determine that some capital murderers deserved a life sentence, but that he would be
open-minded and would listen to all of the evidence. He acknowledged that his views regarding
the death penalty were fairly ingrained and "a lawyer trying to talk [him] out of it [was]n't going
to change [his] feeling or views about the death penalty." However, he also stated that if he was
given "good enough reasons not to give it," then he could see "not giving the death penalty." 

 Although Eddy conceded that he leaned toward giving the death penalty, he consistently
reiterated that he would have to hear all of the evidence before he could make a decision in a
particular case. We hold that the trial court did not err in denying appellant's challenge for cause
to veniremember Eddy. Point of error four is overruled.

 In point of error five, the appellant complains that the trial court erred in denying his
challenge for cause to prospective juror Thomas because Thomas had formed an opinion as to the
appellant's guilt, favored the death penalty, and thought mitigating evidence was irrelevant.

 During voir dire, Thomas indicated that he had read about the crime in the newspaper.
Thomas stated: "I guess I have an opinion, but I don't know that I could, you know, tell you my
verdict, unless I really, you know, heard the evidence." Thomas also confirmed that he was in
favor of the death penalty; however, he admitted that he did not think it was appropriate in all
cases.

 Throughout the State's questioning, Thomas occasionally equivocated in his responses.
For instance, when asked if he could follow a particular law, Thomas responded, "Well, I would
hope I could," and when asked whether he agreed with certain legal concepts, Thomas simply
responded, "That's the law." After the prosecutor clarified that a juror did not need to "be able to
wipe [his] mind clean," to be qualified, and that he need only be able to set aside what he learned
outside of the courtroom and not allow that to influence his verdict, Thomas agreed that he
would be able to do that.

 During the appellant's questioning of Thomas, Thomas indicated that he could not just
forget what he knew about the case, but that his decision would ultimately be based on the
evidence presented. Thomas stated that he believed that the escaped inmates had committed the
crime for which the appellant was on trial, he favored the death penalty, and he thought evidence
of appellant's childhood was not relevant. However, Thomas consistently stated that he would
follow the law despite his abstract opinion. Given this record, we hold that the trial court did not
abuse its discretion in denying the appellant's challenge for cause to veniremember Thomas.
Point of error five is overruled.

 In his sixth point of error, the appellant complains that the trial court erred in denying his
challenge for cause to prospective juror Patterson because Patterson had formed an opinion as to
appellant's guilt, favored the death penalty, thought mitigating evidence was irrelevant, and
would put the burden on the defense to show that the appellant would not be a continuing threat
to society.

 During voir dire, when the prosecutor asked Patterson if she could be a fair and open-minded juror, Patterson equivocally answered, "I'm not sure." In fact, many of her answers
thereafter were equally equivocal. Ultimately, however, when the prosecutor directly asked
Patterson if she could follow any instructions that the court gave her, she said that she could.

 Furthermore, although the prosecutor noted that Patterson had indicated that she favored
the death penalty in her questionnaire, when she asked Patterson about her beliefs, Patterson
stated that a life sentence would be appropriate under the right circumstances. Patterson also
explained that, despite the pretrial publicity in the case, she could set aside any information she
obtained from outside sources and render a verdict and answer the punishment questions based
on the evidence presented. 

 During defense questioning, Patterson acknowledged her belief that the death penalty was
an appropriate punishment. When the appellant reminded Patterson that she had indicated in her
questionnaire that she did not think she could be a fair juror because she thought that the
appellant was guilty, Patterson explained that although she was still of the same opinion, "it
shouldn't, but it might" influence her verdict.

 In discussing the special issues, Patterson indicated that she would expect the person she
found guilty of capital murder to prove that he would not be a future danger. She also explained
that in regard to the mitigation issue, she could not envision a scenario in which she thought a
capital murderer ought to be sentenced to life. Throughout the questioning about the special
issues, it was apparent Patterson did not completely understand the manner in which they were
used. However, towards the end of the appellant's questioning of her, she remarked that, while
she was strongly in favor of the death penalty, her responses in the questionnaire about the death
penalty were made before she knew about the special issues and their function in the trial.

 The court thereafter attempted to clarify Patterson's position. When asked whether she
could answer the first two special issues "yes" or "no" depending upon the evidence presented,
Patterson responded that she could. Patterson also responded that she could still consider a life
sentence even after finding that a defendant would be a continuing threat and did intend or
anticipate that life would be taken. 

 At best, Patterson stated on more than one occasion that she understood the law and could
follow it. At worst, she equivocated and vacillated in her answers. Moore, 999 S.W.2d at 400;
Brown, 913 S.W.2d at 580. Accordingly, we hold that the trial court did not abuse its discretion
in denying appellant's challenge for cause to veniremember Patterson. Point of error six is
overruled.

 The appellant complains in his seventh point of error that the trial court erred in denying
his challenge for cause to prospective juror Carol Wardrup because Wardrup was biased in favor
of the death penalty.

 Throughout the prosecutor's questioning, Wardrup stated that she could be fair and open-minded, could follow the law, and could make her decisions according to the law and the facts
that she heard in the courtroom. She reiterated this stance during appellant's questioning. When
asked by the appellant about her statement in the questionnaire that she favored the death penalty,
Wardrup explained that while this was her opinion irrespective of the law and any particular
facts, she would still have to hear all of the evidence before she could answer any of the
punishment questions in a particular case. Finally, when the judge asked Wardrup directly
whether, despite her opinion, she could follow the law and render her decisions based upon the
evidence presented at trial, Wardrup stated that she could. We hold that the trial court did not
abuse its discretion in denying appellant's challenge for cause to veniremember Carol Wardrup.
Point of error seven is overruled.

 In his eighth point of error, the appellant complains that the trial court erred in denying
his challenge for cause to prospective juror Chitsey because Chitsey favored the death penalty
and thought mitigating evidence was irrelevant.

 Although at the outset of the questioning, Chitsey admitted that he strongly favored the
death penalty, he also indicated that each case should be evaluated on its own facts. Similarly,
Chitsey commented that because of what he already knew about the case through the media, he
did not know if he could truly be fair and wait and listen to all of the evidence before making a
decision in the case. However, after the prosecutor explained that jurors have to make decisions
based on the evidence presented and that they could not be influenced by what they have heard or
read about the case, the court directly asked Chitsey if he could render a verdict based on the law
and evidence, Chitsey responded that he could.

 With regard to mitigating evidence, Chitsey told the prosecutor that he could consider all
of the evidence and base his answer to that question on the evidence. In explaining some of the
answers he gave in his questionnaire regarding mitigating evidence and the death penalty,
Chitsey explained that his answers were given without regard to the circumstances of a particular
offense. Once he learned the law, Chitsey said on a number of occasions that he would base his
decisions both at guilt or innocence and at punishment on the evidence presented in the courtroom. Thus, the trial court did not abuse its discretion in denying the appellant's challenge for
cause to veniremember Chitsey. Point of error eight is overruled.

 In his eleventh point of error, the appellant complains that the trial court erred in denying
his challenge for cause to prospective juror Fullerton because Fullerton favored the death penalty
and was biased against mitigating evidence.

 At the outset of questioning, although Fullerton commented that the United States was
probably "last in line among the nations of the world to reject the death penalty," he stated that
he still believed that death was an appropriate punishment for some extremely heinous and
severe crimes. Fullerton agreed that mitigating evidence is sometimes appropriate, but stated that
he would have to consider all of the evidence before he could answer that special issue. The trial
court did not abuse ts discretion in denying the appellant's challenge for cause to venire member
Fullerton. Point of error eleven is overruled.

 Because the trial court did not abuse its discretion in denying the appellant's challenges to
the various veniremembers presented above, and because the appellant's remaining complaints
involve only three other veniremembers, the appellant cannot show on appeal that at least four of
his complained-of challenges for cause were erroneously denied. Thus, he cannot show harm.
Feldman, 71 S.W.3d at 747. Points of error twelve, thirteen, sixteen, and seventeen are overruled.C. Limiting Voir Dire Questions 

 In points of error fourteen and fifteen, the appellant contends that the trial court erred
when it limited his voir dire examinations of Jerry Wardrup and Dana Self. He asserts that he
was denied the opportunity to ask proper questions of Wardrup and Self, and was thereby denied
the right to intelligently exercise his peremptory challenges. 

 When a trial court erroneously prohibits a defendant from properly questioning individual
prospective jurors, the defendant suffers harm if he has been forced to use a peremptory
challenge he would not have otherwise used but for the trial court's error. Anson v. State, 959
S.W.2d 203, 204 (Tex. Crim. App. 1997). For the reasons noted in points of error twelve,
thirteen, and sixteen, supra, the appellant did not lose the peremptory challenges he exercised
against Wardrup and Self. Therefore, even if the trial court did prohibit him from propounding
proper questions to these two prospective jurors, the appellant cannot show that he was harmed.
Id. Points of error fourteen and fifteen are overruled.

D. Granting State's Challenges for Cause

 The appellant complains in points of error eighteen and nineteen that the trial court erred
in granting the State's challenges for cause to veniremembers Pipkin and Horchem. 

 During questioning by both sides, Pipkin indicated that a life sentence would be more
appropriate for a non-shooter accomplice. The appellant argues that, after further questioning,
Pipkin retreated from this opinion. However, the record reveals that Pipkin changed her stance
several times. Furthermore, Pipkin seemed confused about her own answers and the law.

 Horchem also indicated that although she had no qualms about the death penalty in
general, she could not impose it herself. She also indicated that, due to the media attention
focused on the case, she had formed an opinion as to appellant's guilt which might influence her
in reaching a verdict in this case. The State challenged her on this basis.

 Neither of these complaints is of constitutional dimension. Jones v. State, 982 S.W.2d
386, 391 (Tex. Crim. App. 1998). Therefore, if the trial court erred in these two challenges for
cause, a reversal is warranted only if the record shows that the error deprived the appellant of a
lawfully constituted jury. Id. at 394. The appellant fails to make such a showing in this case.
Points of error eighteen and nineteen are overruled.

E. Qualifying Venirepersons

 The appellant asserts in his twentieth point of error that the trial court erred in denying his
"motion to qualify forty-two venire persons before the exercise of peremptory strikes." He claims
that his rights to due process and equal protection were violated when the trial court overruled his
request to use peremptory challenges following examination of the entire venire as is done in
non-capital cases. We have previously addressed and rejected this argument. Valle v. State, 109
S.W.3d 500, 504 (Tex. Crim. App. 2003); see also Art. 35.13. Point of error twenty is overruled. 

III. Guilt-Stage Issues

A. In-Court Identification 

 The appellant asserts in his twenty-fifth point of error that the trial court "erred in failing
to suppress the in[-]court identification of [the appellant] by the eyewitnesses to the offense." In
support of his assertion, the appellant refers to his argument regarding an unduly suggestive
identification procedure which was set forth in the "points attacking [the appellant's] arrest."

 In this point, the appellant presents some law on identification and lineup procedures. He
then quotes the affidavit of Dr. Roy Malpass who avers that, in his professional opinion, the
lineup the police employed was so unduly suggestive as to amount to an unconstitutional
procedure. What the appellant has not done is to tell us where in the record we might find this
affidavit, who the eyewitnesses are about whom he complains, or where in the record we might
find any of their testimony identifying the appellant in court or testifying to their initial identification of him. Although the State's brief has filled in some of the blanks, it does not absolve the
appellant from properly briefing his own issues. We hold that the appellant's point is inadequately briefed. Tex. R. App. P. 38.1. Point of error twenty-five is overruled.

B. Compelling Testimony

 The twenty-sixth point of error in the appellant's brief is that "the trial court erred in not
compelling Eugene Morgan to testify." The appellant asserted that Morgan would testify that he
was a member of the Catholic clergy and that he held a position of authority and trust when he
sexually abused the appellant as a child. After consulting with counsel appointed by the court,
Morgan invoked his Fifth Amendment privilege against self-incrimination "[w]ith regard to any
relationship with [appellant] or anyone else," and refused to testify. The appellant asked the court
to force Morgan to testify. He claimed that the incidents about which Morgan would testify
happened more than twenty years ago and that the statute of limitations had run, so that Morgan
could no longer be prosecuted. He also claimed that Morgan could not be prosecuted solely on
his statements; corroborating evidence would be required. The appellant also claimed that,
because Morgan was in the State pursuant to a subpoena, he could not be arrested or served with
process. 

 On appeal, the appellant claims that Morgan's testimony was central to his punishment
defense, which centered on the "psychological difficulties that resulted from his molestation as a
teenager" by Morgan.

 The Fifth Amendment, made applicable to the states by the Fourteenth Amendment,
requires, "No person . . . shall be compelled in any criminal case to be a witness against himself."
U.S. Const. amend. V; Malloy v. Hogan, 378 U.S. 1 (1964). This privilege not only extends "to
answers that would in themselves support a conviction . . . but likewise embraces those which
would furnish a link in the chain of evidence needed to prosecute the claimant." Hoffman v.
United States, 341 U.S. 479, 486 (1951). However, the government may compel witnesses to
testify when their incriminating statements (or evidence derived from those statements) cannot be
used against the speaker in any criminal case. United States v. Balsys, 524 U.S. 666, 671-72
(1998); Kastigar v. United States, 406 U.S. 441, 458 (1972); Brown v. Walker, 161 U.S. 591,
602-04 (1896). For instance, the privilege preserves the core Fifth Amendment right by granting
a witness immunity from the use of that compelled testimony in a subsequent criminal case.
Chavez v. Martinez, 538 U.S. 760, 770-72 (2003). Likewise, when the relevant limitations period
has expired, the protection provided by the Fifth Amendment becomes moot and the privilege
against self-incrimination no longer applies. Stogner v. California, 539 U.S. 607, 619-20 (2003);
Brown, 161 U.S., at 597-98. The trial court is required to determine whether the witness has
correctly asserted the privilege, and to order the witness to answer questions if the witness is
mistaken about the danger of incrimination. Ohio v. Reiner, 532 U.S. 17, 19 (2001); Hoffman,
341 U.S., at 486.

 In the instant case, neither party requested that Morgan be granted immunity for his
testimony. Rather, the appellant argued that Morgan should be compelled to testify because of (1)
the running of the statute of limitations; (2) the need for corroboration, and (3) the fact that
Morgan could not be arrested or subjected to service of process as long as he was compelled to
be in Texas by subpoena. However, all of the appellant's arguments were based on Texas law.
Balancing the defendant's right to compulsory process and the right to present a defense against
the witness's right not to incriminate himself, the trial judge stated that no evidence had been
presented regarding whether the witness could still be convicted in another jurisdiction, especially in light of the recent national exposure regarding sexual abuse by members of the clergy.
Furthermore, the judge remarked that he was "even more satisfied" with the ruling after the
appellant made an offer of proof that detailed a number of extraneous acts.

 Notwithstanding this, the lack of specificity as to these acts, their location(s), and the time
frame involved, required the trial court to speculate somewhat in making its determination.
However, even if this speculation resulted in the trial court's erring in its determination not to
compel Morgan to testify, the record shows beyond a reasonable doubt that the appellant was not
harmed by any such error. Tex. R. App. P. 44.2(a). The fact that the appellant became sexually
involved with Morgan was presented through the defense psychologist, Dr. Judith Becker.
Becker also testified about the appellant's feelings concerning the involvement and the negative
impact of Morgan's rejection of the appellant. These facts remained undisputed even though the
State extensively challenged Becker's professional opinion of the appellant as a passive person
and her lack of review of various documents generated in the case. Because the appellant was not
harmed by the lack of Morgan's direct testimony, we overrule his twenty-sixth point of error.

C. Stipulating to Cause and Manner of Death

 In his twenty-seventh point of error, the appellant complains that "the trial judge erred in
failing to allow [him] to stipulate to the cause and manner of [Hawkins's] death because, in light
of the offer to stipulate, such testimony was more prejudicial than probative." Specifically, the
appellant sought to exclude the medical examiner's testimony and a mannequin the doctor used
to show Hawkins's wounds.

 The appellant relies on Old Chief v. United States, 519 U.S. 172 (1997), and Tamez v.
State, 11 S.W.3d 198 (Tex. Crim. App. 2000), to support his claim that the court should not have
allowed this evidence. However, Old Chief and Tamez concerned the prejudicial effect of
evidence of a defendant's prior convictions when the defendant has offered to stipulate to the
existence of such convictions. That is not the case here.

 In the instant case, the appellant and six other prison escapees robbed a sporting goods
store and killed a police officer. The jury was allowed to find the appellant guilty either as a
principal or as a party to the crime. The appellant's actions, the actions of his co-defendants, and
the nature and extent of the wounds Hawkins suffered were directly relevant and highly probative
to the decision that the jury had to make in this case.

 Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value
"is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence." Unfairly prejudicial evidence gives rise to "an undue tendency to suggest decision on
an improper basis, commonly, though not necessarily, an emotional one." Rogers v. State, 991
S.W.2d 263, 266 (Tex. Crim. App. 1999). Although graphic evidence of the injuries that the
appellant and his co-defendants caused may be prejudicial, it is not unfairly so. Id. Finally, the
prosecution is entitled to prove its case by evidence of its own choice, and a criminal defendant
may not stipulate or admit his way out of the full evidentiary force of the case as the State
chooses to present it. Old Chief, 519 U.S., at 186-89. The trial court did not abuse its discretion
in refusing to allow the appellant to stipulate to the cause and manner of Hawkins's death. Point
of error twenty-seven is overruled.

D. Party Instructions


 The twenty-eighth point of error, is that the appellant's Fifth, Sixth, and Fourteenth
Amendment rights were violated by the charge of the court, which allowed the jury to convict the
appellant as a party to the offense. Specifically, the appellant argues that, in light of the United
States Supreme Court's opinions in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v.
Arizona, 536 U.S. 584 (2002), the parties issue should have been pled in the indictment. The
appellant, however, also recognizes that this Court has long held that the law of parties need not
be pled in the indictment. Marable v. State, 85 S.W.3d 287 (Tex. Crim. App. 2002).

 Apprendi and Ring focus on facts which will increase punishment over the statutory
maximum. Specifically, Ring requires any fact other than prior convictions that increase the
maximum penalty be alleged in the indictment and proved beyond a reasonable doubt in federal
cases. Ring, 536 U.S. at 600. The statutory maximum punishment in capital murder cases is
death. Tex. Penal Code § 19.03(b). A party to a capital murder is criminally responsible for the
crime to the same extent a principal is. Tex. Penal Code §§ 7.01-02. Including the parties issue
in the indictment would not allow the State to seek a more severe punishment. Accordingly,
Apprendi and Ring do not require the parties issue to be alleged in the indictment. Point of error
twenty-eight is overruled.

 We affirm the judgment of the trial court. 


Hervey, J., not participating.


Delivered March 29, 2006.


Do Not Publish.